## WOODWARD et al. v. PRAIRIE OIL & GAS CO. et al.

No. 15720—Opinion Filed Dec. 8, 1925.

Rehearing Denied Feb. 9, 1926.

1. **Attorney and Client—Contract for Attorney's Fee Superseded by Later Contract.**

W. entered into a contract with B. and B., attorneys, to prosecute an action to quiet title in W. to a tract of land, and thereafter another contract was entered into between the parties providing for the amount of attorney's fee to be paid for such litigation, and the attorneys proceeded to prosecute the action under the latter contract. Held, that the attorneys cannot recover for their services under the former contract, the same having been superseded by the latter one.

2. **Mortgages—Validity of Sale under Deed of Trust Executed in Indian Territory Before Statehood.**

Where a deed of trust, with power of sale, to real property was executed in the Indian Territory and a summary sale and conveyance of the real property were made after statehood in compliance with the provisions of Mansfield's Digest of the Laws of Arkansas of 1884, in force in the Indian Territory when the deed of trust was executed, the sale and conveyance are valid.

3. **Same.**

Record examined, and held, that the trustee's sale and conveyance of the real property in question were in substantial compliance with the provisions of Mansfield's Digest.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Muskogee County; O. H. Searcy, Judge.

Consolidated actions between Peggy Woodward, J. J. Bruce, L. H. Brewer, and Prairie Oil & Gas Company, Terriokla Oil & Gas Company, Minneokla Oil & Gas Company, and E. L. Graves. From the judgments, the first three parties named appeal. Affirmed.

Bruce & Brewer, for plaintiffs in error J. J. Bruce and L. H. Brewer.

C. E. Corbett, for plaintiff in error Peggy Woodward.

West, Gibson, Sherman, Davidson & Hull, for defendant in error Prairie Oil & Gas Company.

Malcolm E. Rosser, for defendants in error Minneokla Oil & Gas Company and Terriokla Oil & Gas Company.

Neff & Neff, for defendants in error William Neff and E. L. Graves.

Opinion by JARMAN, C. On January 24, 1906, Peggy Woodward, a Creek freedwoman, executed to H━━y Lee Taft, trustee, a deed of trust, with power of sale, to 90 acres of land, to secure certain indebtedness, and, during 1907, she executed an oil and gas lease on said land to Drury H. Middleton, and, in July, 1908, Middleton assigned said lease to the Prairie Oil & Gas Company. On March 5, 1913, the trustee sold the land, under the terms and provisions of the deed of trust, at public auction, to John J. Bogard, Jr., to satisfy indebtedness, which had matured. The trustee's deed was executed and delivered to the purchaser and was filed for record on March 13, 1913, and the purchaser, Bogard, notified the Prairie Oil & Gas Company that its rights under the Middleton lease were extinguished by the trustee's sale. On May 29, 1913, Bogard executed an oil and gas lease to the Prairie Oil & Gas Company on ten acres of the

90 acres covered by the Middleton lease, and on June 10, 1913, the Prairie Oil & Gas Company released the remaining 80 acres to Bogard. On October 15, 1913, Bogard conveyed said 90 acres by warranty deed to W. E. Farley. On July 9, 1920, Peggy Woodward, acting through John P. Shelburn, entered into a contract with J. J. Bruce, an attorney, who took the contract in the name of J. J. Bruce and L. H. Brewer, composing the firm of Bruce & Brewer, attorneys, in which it was agreed that said attorneys were to receive 50 per cent. of all recovery, including lands, oil and gas royalties, etc., for their services in conducting a suit to quiet title, in Peggy Woodward, to the 90 acres of land in question. On July 9, 1920, the same day the contract of employment was made, J. J. Bruce filed a petition to quiet title to said land, and, thereafter, two amended petitions were filed by Bruce, and by this time the land in question was about to be sold at a foreclosure sale by the sheriff to satisfy a mortgage held by W. H. Ludwig, and, in order to save the land from being thus sold, and becoming lost to the parties concerned, Peggy Woodward negotiated a loan with E. L. Graves for the purpose of paying off said mortgage, and, on November 10, 1920, Graves agreed to furnish the necessary funds to Peggy Woodward, provided she would employ William Neff, an attorney at law, to handle the suit brought by her to quiet title to said land, which was agreed to by her, and, on that date, she entered into a written contract with Neff whereby she agreed to pay him for his services, in connection with said litigation, an amount equal to one-fourth of all lands and money collected or realized by such litigation. This arrangement was satisfactory with, and consented to by, Bruce, and on the same date, November 10, 1920, the said J. J. Bruce and John P. Shelburn entered into a written contract with Peggy Woodward whereby they were to be paid an amount equal to one-fourth of all lands and monies collected by virtue of said litigation. This latter contract, in which Bruce was interested, was filed for record on November 27, 1920. Prior to the making of this second contract, Peggy Woodward executed to Bruce and Brewer, on September 30, 1920, a warranty deed for an undivided one-half interest in said land, but said deed was not filed for record until March 10, 1921. After William Neff was employed as an attorney in the case, he prepared a third amended petition in the action to quiet title, and associated Bruce & Brewer with him as attorneys for Peggy Woodward, the plaintiff, which was in keeping with the contracts

of employment made by said attorneys with the plaintiff on November 10, 1920. E. L. Graves furnished the funds necessary to take care of the Ludwig mortgage and other indebtedness against the land, and, on December 27, 1920, Graves negotiated with Ludwig and procured a quitclaim deed from him to Peggy Woodward to said land, which was delivered to Mr. Neff and was by him filed for record. Thereafter, and on October 30, 1922, another action, No. 11684, was filed by Peggy Woodward, through a different set of attorneys, in the district court of Muskogee county, for the purpose of canceling and setting aside the contracts for attorney's fees held by Mr. Neff and by Bruce and Brewer, and for the cancellation of the oil and gas lease held by the Prairie Oil & Gas Company and its assignees, and to quiet title to said land. To this petition, Bruce and Brewer filed their separate answer and cross-petition, setting up their first contract of employment, and alleged that by virtue of said contract they were entitled to a decree for one-half of the land in question, which had been reconveyed to the plaintiff, William Neff also filed his separate answer and cross-petition, in which he sought judgment for one-fourth of said land, in keeping with his contract of employment made and entered into with the plaintiff on November 10, 1920. Said case No. 11684 was consolidated with the first action, No. 7544, and, upon a hearing being had, the trial court rendered a decree in which the court found and adjudged that the first contract of employment held by Bruce and Brewer was superseded by the second contract under date of November 10, 1920, which made the same provisions with respect to the amount of attorneys' fees to be paid as the contract made with Mr. Neff, and the court rendered judgment in favor of Bruce and Brewer for an undivided one-fourth interest in and to said land, subject to the life estate of the plaintiff therein, and from this judgment Bruce and Brewer have appealed. Judgment was also rendered in favor of the Prairie Oil & Gas Company et al., defendants, holding that their leases were valid and subsisting, and from this portion of the judgment the plaintiff, Peggy Woodward, has appealed.

It is sufficient to say in order to dispose of the contentions of Bruce and Brewer that the evidence fully sustains the findings of the trial court that the former contract of employment, entered into by them with the plaintiff, was supplanted and superseded by the subsequent contract made and entered into on November 10, 1921, whereby the amount of attorney's fee was fixed at one-

fourth of all lands and moneys recovered by said action. The actions of Bruce and Brewer indicated that they did not rely upon their first contract. After the second contract was made, they forthwith placed it of record, but neither the first contract nor the deed they took from the plaintiff to an undivided one-half interest in the land in question was placed of record until March 10, 1921, long after the second contract had been placed of record; and, besides, on March 4, 1921, J. J. Bruce wrote a letter to E. L. Graves in which he recited that the issues between the plaintiff and Farley had been adjudged out of court upon the consideration that Farley should reconvey by quitclaim deed the land to the plaintiff, and complained about Mr. Neff not placing the quitclaim deed on record, and in this connection stated:

"I am writing you this letter for the purpose of asking that you take this matter up with Mr. Neff and have the quitclaim deed from W. E. Farley to Peggy Woodward, covering the lands in question, filed for record and let us get the conveyances from Peggy Woodward to Mr. Neff and I, for our quarter interest each, filed."

This shows clearly that Bruce and Brewer were relying upon the second contract, and they were not entitled to recover under the first one.

Bruce and Brewer further contend that the trial court erred in making their undivided one-fourth interest in said land subject to the life estate of the plaintiff, and urge that this is in violation of the second contract. The second contract was entered into by the plaintiff with J. J. Bruce and John P. Shelburn. Shelburn is not an attorney at law and was never licensed as such, and under section 4087, C. S. 1921, providing that no person shall be permitted to practice as an attorney at law unless he has been previously admitted to the bar, and under sections 4111 and 4112, C. S. 1921, making it unlawful for any person not admitted to practice law to appear for or to represent any party to a civil or criminal action, and providing penalties therefor, the second contract was unenforceable and void, and under such circumstances Bruce and Brewer were entitled to recover only on a quantum meruit basis, and the fee fixed by the trial court for the services rendered is reasonable and adequate.

The plaintiff, Peggy Woodward, relies on the proposition that the trustee's sale of the property in question was void, in order to defeat the oil and gas lease held by the Prairie Oil & Gas Company and its assigns.

Plaintiff contends that the trustee's sale was void for several reasons, but only three grounds are presented and relied upon in the briefs: (1) That the trustee failed to appraise the land before sale. (2) That the trustee failed to make and deliver to the plaintiff, mortgagor, a verified statement of account showing each item, debit and credit, and the balance due. (3) That the purchaser took possession of the premises before the 12 months' redemption period had expired, and during such period the purchaser collected sufficient rents, for which he was accountable to the plaintiff, to pay the indebtedness and redeem the premises.

In the first place, it must be borne in mind that the deed of trust in question was executed prior to statehood and in the Indian Territory, and, therefore, the transaction was governed by chapter 110 of Mansfield's Digest of the Laws of Arkansas of 1884, which had been extended over and were in force in the Indian Territory at that time. The procedure prescribed by Mansfield's Digest for the foreclosure of the deed of trust and sale of the property in question was the proper procedure to follow after statehood, when the sale in question was made on March 5, 1913. Buckley v. Morton, 93 Okla. 45, 219 Pac. 685. In the deed of trust, the plaintiff, the grantor, waived all rights of appraisement as provided by section 4763, M. D., and, therefore, no appraisement was necessary.

As to the second proposition, that the trustee failed to make and deliver a verified statement of account to the plaintiff prior to the sale, it is sufficient to say there was no law in force in the Indian Territory at that time requiring such procedure. Plaintiff, in support of this proposition, cites and relies upon section 5110 of the Statutes of Arkansas of 1894, which provides that before any trustee shall proceed to foreclose any deed of trust or to replevy under the deed of trust any personal property, the trustee shall make and deliver to the grantor a verified statement of his account, etc. This section was not a part of the laws of the state of Arkansas embraced in Mansfield's Digest of 1884, which were extended over the Indian Territory; and, besides, said section 5110 of the Arkansas Statutes of 1894 refers only to personal property and has no reference to the making and delivering of a verified statement of account where real estate is sold. Blake v. Askew, 112 Ark. 514, 166 S. W. 965.

On the proposition that the purchaser took possession of the premises before the time of redemption had expired, it is sufficient

to say that the plaintiff specifically waived her right of redemption in the deed of trust as authorized by section 4763, Mansfield's Digest.

We find no prejudicial error in the record, and the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 6 C. J. p. 736, § 310. (2) 27 Cyc. p. 1450. (3) 27 Cyc. p. 1504.