BLAKE BROTHERS *v.* ASKEW & BRUMMETT.

Opinion delivered April 20, 1914.

1. MORTGAGES—NOTICE TO MORTGAGOR—FORECLOSURE.—Kirby's Digest, § 5415, providing for the giving of notice to the mortgagor before proceeding to foreclose, by its terms applies only to mortgages of personal property. (Page 518.)

2. MORTGAGES—ASSUMPTION OF DEBT—FORECLOSURE.—Appellants owed a debt to B. Appellees assumed the debt to B., and B. released the appellants from liability. In an action by appellees against appellants to foreclose on the security given by appellants to secure the appellees, it is immaterial whether appellee has settled with and paid B.'s debt or not, and it is also immaterial and no defense for the appellants that B. joined with them in executing the note to appellees, on which the action of appellant was founded. (Page 519.)

3. USURY—PAYMENT.—Appellants owed a debt to B. Appellees assumed the debt, paying the same to B., and B. released the claim against appellants. In an action by appellees against appellants, it

is no defense that the debt to B. was usurious, since appellants had elected to pay that debt. (Page 519.).

4.  USURY—SALE OF GOODS.—A transaction whereby appellees sold merchandise to appellants on credit is not usurious, when the goods were sold at the usual price such goods were sold to customers on credit. (Page 520.)

5.  ASSIGNMENT OF CLAIM—BINDING EFFECT.—Where appellees assumed a debt which appellants owed to one B., and B. released appellants from liability, although appellees had not paid B., B. is not entitled to a judgment against appellants on the original debt. (Page 521.)

Appeal from Nevada Chancery Court; *James D. Shaver*, Chancellor; affirmed.

STATEMENT BY THE COURT.

This is an action in the chancery court by appellees against appellants to foreclose a deed of trust on certain lands situated in Nevada County, Arkansas. The facts are substantially as follows:

C. S. and T. J. Blake were the owners of certain lands in Nevada County, Arkansas. In 1911 they owed J. M. Barr $266, which was secured by a mortgage on a part of said lands. They owed Mrs. F. S. Brummett $205.78, which was also secured by a mortgage on a part of their lands. They owed T. G. Boswell the sum of $1,305.62, which was secured by some kind of a land contract, the exact nature of which does not appear from the record, for there is some conflict in the evidence as to the exact nature of it. All these amounts were due, and bore interest at the rate of 10 per cent. Mr. Barr was pressing the Blakes for payment of his debt. J. H. Askew and F. S. Brummett were merchants in Nevada County under the firm name of Askew & Brummett. About the first of March, 1911, the Blakes went to them and gave them a list of the indebtedness they owed, as above stated, and told them that Barr was insisting upon the payment of his debt. It was agreed between the parties that Askew & Brummett should assume these debts and advance to the Blakes certain supplies to enable them to make a crop, and that the Blakes would execute them a mortgage on their land to secure the whole of said in-

debtedness. Askew & Brummett demanded an abstract of title to the lands, and it was agreed between the parties that the Blakes should pay for it. It was estimated at the time that the abstract would cost $40, but it was afterward ascertained that it cost $41. The amounts owed by the Blakes to Boswell, Barr and Mrs. Brummett, and the abstract and the supplies to be thereafter furnished by Askew & Brumett, were estimated by the parties at $2,589.61. It was agreed between them that the Blakes should execute to Askew & Brummett a note for $2,600, but it was understood that the exact amount of the supplies to be thereafter furnished should be evidenced by a book account. On the 7th of March, 1911, the Blakes executed a deed of trust to their lands to P. H. Alsobrook, trustee, to secure Askew & Brummett for said indebtedness. The deed of trust recites that the Blakes are indebted to Askew & Brummett ''in the sum of $2,600, as evidenced by their note of this date, due and payable on the 1st day of October, 1911, with 10 per cent interest from due until paid, and being desirous of securing the payment of said sum of money, and all other indebtedness that may be due at or before foreclosure proceedings hereunder,'' unto Askew & Brummett that they granted, bargained and sold and conveyed the land, etc. During the year 1911 T. J. Blake purchased of Askew & Brummett goods to the amount of $159.40, and paid to Askew & Brummett that year $159.50. During the same year C. S. Blake traded with them to the amount of $508, and paid them nine bales of cotton, amounting to $397.71. The Blakes also owed them for a small amount of goods at the time the deed of trust was executed. Askew & Brummett paid to Barr the amount that the Blakes owed him. They also assumed to pay to Mrs. Brummett the amount that the Blakes owed her, and she agreed to release the Blakes from all liability on their indebtedness. They also assumed the indebtedness due by the Blakes to Boswell, and the latter released them from all liability on said indebtedness. It was agreed, however, between Boswell

and Askew & Brummett that the latter should first be paid the other amounts that were due them by the Blakes, and that Boswell should not be paid by them until after the remaining indebtedness due by the Blakes to Askew & Brummett had been paid. In short, it was agreed between Askew & Brummett and Boswell that, in the event the deed of trust had to be foreclosed to obtain the payment of the indebtedness, the debt of Boswell should not be paid out of the proceeds of the foreclosure until after the remaining indebtedness to Askew & Brummett had been paid, and that they should only receive what was left after paying the other indebtedness.

The above is a brief summary of the evidence given by appellees. They also stated they were engaged in the mercantile business and sold goods on a credit; that the goods furnished appellants were sold to them at the usual prices they sold to other customers on a credit.

Appellants testified in their own behalf and admitted that they owed to Mrs. Brummett, to Barr and to Boswell the amounts hereinbefore set out, and that said indebtedness was secured by mortgages on their lands. They admitted they borrowed the money named above from Mrs. Brummett, and that they received checks from her for all of it, but state that they gave $25 of this amount to F. H. Brummett, who was her husband, for his services in procuring the loan for them. They say that Askew & Brummett charged them for the goods they bought from them an amount more than 10 per cent over what they received for sales of goods for cash.

Other evidence will be stated or referred to in the opinion. The chancellor found in favor of appellees and entered a decree of foreclosure in their favor. The case is here on appeal.

*D. L. King,* for appellants.

1. The statute requiring that an itemized statement to the mortgagor before bringing suit to foreclose, is mandatory. Kirby's Dig., § 5415; 92 Ark. 313.

2. Appellees not having paid the Boswell debt, had no right to foreclose the mortgage for the nonpayment of

that debt. An action prematurely brought, should be abated, even though a right of action matures before the trial. 106 Ark. 315.

3. The record discloses a contract affected with usury from its inception. 95 Ark. 501; 60 Ark. 367; 55 Ark. 143; 32 Ark. 346; 41 Ark. 331; 55 Ark. 268; 35 Ark. 217.

*McRae & Tompkins,* for appellees.

1. The act requiring delivery of a statement to the mortgagor before bringing suit, applies only to personal property. Kirby's Dig., § 5415.

2. The burden is upon the party who pleads usury to show clearly that the contract is usurious. 57 Ark. 251; 83 Ark. 31.

But suppose the Mrs. Brummett note was usurious? Appellants had the right to pay it, and did pay it by procuring Askew & Brummett to pay, or assume its payment. Appellees were not volunteers. 77 Ark. 103; 64 Ark. 39; 63 Ark. 385.

"No contract which in its inception is unaffected with usury, can ever be invalidated by any usurious transaction." 25 Ark. 258.

Selling goods for a greater amount than the cash price and 10 per cent does not constitute usury. 36 Ark. 248; 46 Ark. 50; 55 Ark. 265; 91 Ark. 458; 55 Ark. 268.

HART, J., (after stating the facts). It is insisted by counsel for appellants that the decree should be reversed because appellees did not make and deliver to appellants a verified statement of their account before the foreclosure proceedings were instituted. Section 5415, of Kirby's Digest, provides that before any mortgagee shall proceed to foreclose, any mortgage or deed of trust of personal property, such mortgagee shall make and deliver to the mortgagor a verified statement of his account, showing each item, debit, and credit, and the balance due. This section, by its terms, applies only to mortgages of personal property; and, the mortgage or deed of trust in question being on real estate, the section has no application.

Counsel for appellants also insist that appellees had no right to foreclose the mortgage for the nonpayment of the debt of Boswell. They contend that, because appellees have not yet paid Boswell, they had no right to foreclose the mortgage to obtain satisfaction of the debt. They also object that Boswell signed the $2,600 note which they gave to Askew & Brummett. The evidence of appellees shows that Boswell released the Blakes from all liability on his debt at the time the mortgage, or deed of trust in question was executed, and the Blakes admit this fact. It is true there was an agreement between Askew & Brummett and Boswell that the latter should not be paid out of any of the proceeds of the mortgage foreclosure until the other indebtedness had been first paid; but the Blakes were not parties to this agreement, and had no interest or concern in it. They had been released from all liability to Boswell, and it could make no difference whatever to them that Boswell was not paid at the time. Whatever agreement was made between him and Askew & Brummett as to the time he should be paid by them did not in any way concern the Blakes; neither were they injured by the fact that Boswell also signed the $2,600 note. In the first place, it may be said that the $2,600 note was executed for convenience sake, and that it was understood that the real indebtedness owed by the Blakes to Askew & Brummett was the amount which the former owed to Barr, Boswell, and Mrs. Brummett, and the goods thereafter to be furnished them by Askew & Brummett. Appellants were not in any way injured by Boswell signing the $2,600 note, and the decree should not be reversed on that ground. It is true it does not appear exactly why Boswell signed the note, but the presumption is that he signed it in order to show that Askew & Brummett should not pay him until they had first obtained satisfaction for the remaining amount due them by appellants.

It is also contended by counsel for appellants that the judgment should be reversed because the debt to Mrs. Brummett was usurious. Appellants admit that Mrs.

Brummett advanced to them the money which Askew & Brummett assumed to pay her. They also admit that Mrs. Brummett released them from all liability when Askew & Brummett assumed to pay their indebtedness to her. Therefore, appellees were not affected by usury in the contract between Mrs. Brummett and the appellants. Conceding that the debt was tainted with usury, appellants elected to pay it, and procured its payment by appellees, or, what amounts to the same thing, made a contract with them whereby they assumed to pay Mrs. Brummett for them, and by this agreement procured Mrs. Brummett to release them from any obligation on account of the indebtedness. See *Lowe* v. *Walker,* 77 Ark. 103.

Appellants also testify that they paid Askew & Brummett for goods which they purchased from them, a greater amount than 10 per cent added to the cash price of the goods. Askew & Brummett were retail dealers in merchandise, and sold goods mainly on a credit. It was the intention of the parties at the time the mortgage was executed that Askew & Brummett should furnish them with supplies, and that the goods should be sold on a credit. Askew & Brummett had a right to sell goods on a credit for a higher price than they would have sold them for cash. It is true that they sold them to appellants at a profit greater than 10 per cent over the price they were usually sold for cash, but there is nothing to show that this was done to evade the usury law. On the contrary, the evidence shows that it was done in good faith, for the purpose of making a profit on the goods sold. Appellees testified that they sold the goods to appellants at the usual price they sold goods to their customers generally on a credit, and this statement is not denied by appellants. Therefore, there was no usury in this transaction. *Briggs* v. *Steele,* 91 Ark. 458.

It appears from the record that the decree of foreclosure was made for the amount of money that appellants actually owed to appellees Askew & Brummett, and for the amounts which the latter had assumed to pay for them. The court rendered a decree of foreclosure for

the amount of money which Askew & Brummett had assumed to pay for appellants to Barr, to Mrs. Brummett, and to Boswell. All these amounts, under the original contract, were due at the time the mortgage was executed, and bore interest at the rate of 10 per cent. No interest was charged on the goods sold by Askew & Brummett to appellants until after the accounts became due in the fall. We are of the opinion that the decree of foreclosure was for the amounts actually due by appellants to appellees Askew & Brummett for goods sold by them to appellants and for the debts assumed by them for appellants.

Appellees have taken a cross appeal in the case. After the original complaint was filed, an amendment was made to it by which Boswell and Mrs. Brummett became parties plaintiff. It is insisted by counsel for appellees that Boswell should have a personal judgment against appellants for the amount of his debt. We do not agree with them in this contention. The undisputed evidence shows that at the time of the execution of the deed of trust, Boswell released appellants from all liability on his debt and looked alone to Askew & Brummett and to the security they had taken for the payment of his debt.

Again it is contended by counsel for appellees that Askew & Brummett should have a personal judgment against appellants for the amount of the Boswell debt. We do not think they are right in this contention. We have not set out in full all the testimony relating to the agreement between Askew & Brummett and Boswell as to the payment of his debt, but, after a careful consideration of the record, we think that it was agreed between these parties that they should look alone to the security for the satisfaction of this debt, and that Boswell should be paid by Askew & Brummett only such amount as they should realize under a sale of foreclosure after their other indebtedness had been satisfied. In other words, it was agreed between them that, in the event it was necessary to foreclose the mortgage, Askew & Brummett should

be first paid out of the proceeds of the other indebtedness secured by the mortgage, and that the remainder should be applied to the satisfaction of the Boswell debt. This agreement contemplated that Askew & Brummett should only pay them what they realized out of the proceeds of the sale of the mortgaged property after the other indebtedness was paid or satisfied. Therefore, we think the chancellor was correct in refusing to give Askew & Brummett a personal judgment against appellant for the Boswell debt.

We think the decree on the whole case was correct, and it will be affirmed.