PERRY *v.* SHELBY.

4-5156

Opinion delivered July 11, 1938.

542

*Rowell, Rowell & Dickey,* for appellants.

*E. W. Brockman,* for appellee.

DONHAM, J. The appellee, Gertrude Shelby, is a negro woman of less than average intelligence, with little or no knowledge of legal matters, and regarding the transactions revealed by the evidence in this case, relied implicitly on appellant, M. R. Perry, a negro lawyer who has practiced law in Pine Bluff for several years. At the time, as shown by the evidence, he lived in Pine Bluff and was engaged in business as an undertaker, which appears to have been a sort of side-line to his law practice. The appellee formerly lived in Pine Bluff, but since 1926 has resided in St. Louis, Missouri.

On December 19, 1932, M. R. Perry went to St. Louis for the purpose of buying some equipment for his side-

line, however, he was completely without funds with which to make the purchase. He knew appellee well, she having lived near him from his boyhood until she moved to St. Louis. He called on her in St. Louis, induced her to lend him $450 at 8 per cent. interest, and agreed to execute a mortgage on a house and lot in Pine Bluff as security, but did not advise her that there was already a first mortgage lien against the property.

He told appellee that 8 per cent. was the highest rate of interest, and after considerable figuring, told her that the principal and interest when paid would amount to approximately $540. Appellant, M. R. Perry, contended that due to the fact his wife was in Pine Bluff he would return home, execute the mortgage and notes and mail same to appellee in St. Louis. His brother, H. T. Perry, was also in Pine Bluff and it was necessary to have him sign the mortgage and notes in order to consummate the deal. The mortgage was executed in Pine Bluff December 30, 1932, recorded December 31st, and the mortgage and notes were then mailed to Amos Davis in St. Louis to be delivered to appellee.

When appellee received the mortgage and notes, she discovered that the Metropolitan Life Insurance Company had the first lien. The notes she received with the mortgage were in the sum of $180 each, making a total of $540, which sum appeared in the body of the mortgage, but in a subsequent clause in the mortgage describing the indebtedness secured thereby, the debt was described to be three notes in the sum of $140 each, and interest at 8 per cent. from date, and payable 6, 12 and 18 months after date, respectively.

Between the execution of the mortgage and notes in December, 1932, and March, 1935, appellants had paid a small sum on the indebtedness. Sometime about the 23rd of March, 1935, appellee came to Pine Bluff to effect collection, if possible, of the indebtedness.

Appellant, M. R. Perry, was out of the city, and she, therefore, discussed the matter with appellant, H. T. Perry, who entered into an agreement with her for an extension of the indebtedness, and new notes were exe-

cuted evidencing the extension. This new arrangement gave appellants a longer time within which to pay the indebtedness and provided for monthly payments of $15 each. Some two or three payments were made thereafter, making a total sum paid on the whole indebtedness of $78, according to appellee, but appellants' record showed payment of $70 only.

Appellee thereafter sent the mortgage and new notes to her counsel for the purpose of bringing suit to foreclose the lien, and suit was thereafter filed. The first lien holder intervened, set up its mortgage and prayed that its lien be declared superior to plaintiff's lien. Appellants answered and pleaded as to appellee's mortgage:

1. Accord and satisfaction, alleging that the notes executed in pursuance of the agreement to extend swept away the mortgage lien and fully paid the appellee the money appellants had borrowed.

2. The contract was void on the ground of usury.

The case proceeded to trial and resulted in a decree for appellee for her debt in the sum of $450, with interest at 8 per cent. from December 30, 1932, less amount paid, but declared same a second lien upon the property, from which decree comes this appeal.

It is contended that the decree should be reversed for the following reasons:

1. That the contract is void and unenforceable on account of usury.

2. That the notes executed by H. T. Perry March 25, 1935, fully paid the debt and released the lien of the mortgage.

As to whether it was the intention of appellee to charge or receive for the use of the money which she loaned appellants a greater rate of interest than 10 per cent., she testified:

"If it was an illegal agreement I don't know anything about it and he didn't mention it to me and he has never promised to pay me any more than 8 per cent., and he did all the figuring himself. I don't know what he put in those papers, because I left it to his honesty to be fair with me and told him at the time that I didn't

know anything about court and that I was leaving it up to him. He told me that he would be fair with me. He said they used to charge 10 per cent. interest, but that you couldn't do that now. I never made a loan before when I received a note. I have just made a loan on general friendly principles."

It is evident from the evidence of appellee that she did not intend to demand or to receive for the use of the money which she loaned an amount which could be considered usury under the law. It is further evident that appellee knew nothing about legal matters and that she trusted appellant, M. R. Perry, to draw the note and mortgage so as to secure her for the $450, with interest at the rate of 8 per cent. per annum, and that she expected nothing more. M. R. Perry was a lawyer. He must have known when he drew the note and mortgage that he was drawing them in such manner as would enable him to plead usury and defeat collection of the principal and interest; but appellee had no such knowledge and, if she is to be believed, never had an intention to receive a greater rate of interest than 8 per cent. on the $450 which she had loaned. From the record, it is difficult to believe that M. R. Perry did not intend to defraud appellee. The manner in which he drew the note and mortgage must be ascribed to ignorance or an intent to defraud. Being a lawyer, he must have known how to draw a simple note and mortgage.

In the case of *Scruggs* v. *Scottish Mortgage Co.*, 54 Ark. 566, 569, 16 S. W. 563, this court said: "To constitute usury, there must be an agreement to pay for the use of money more than 10 per cent. interest."

In the case of *Citizens Bank* v. *Murphy*, 83 Ark. 31, 36, 102 S. W. 697, this court said: "To constitute usury, there must be an agreement on the part of the lender to receive, and on the part of the borrower to give, for the use of money, a greater rate of interest than 10 per cent."

Both of the above cases were cited in the case of *Jones* v. *Phillippe*, 135 Ark. 578, 206 S. W. 40, and it was there held that the law as announced in *Garvin* v. *Linton*, 62 Ark. 370, 379, 35 S. W. 430, 37 S. W. 569, to the

effect that it is not necessary that both parties be cognizant of the fact or facts constituting usury is the correct theory; that the lender alone is the violator of the law, and against him alone are its penalties enacted.

While it is not necessary that both parties be cognizant of the fact or facts constituting usury, it is necessary that the lender have an intention to charge a usurious rate of interest or be cognizant of the fact or facts which constitute usury.

In the instant case, according to the evidence of appellee, she had no intention to charge a greater rate of interest than 8 per cent. per annum on the exact amount of the loan. She knew nothing about how the papers should be drawn and, as stated, she left the matter entirely in the hands of one of the appellants, M. R. Perry. It is true that this court held in the case of *Dickinson-Reed-Randerson Co.* v. *Stroupe,* 169 Ark. 277, 275 S. W. 520, that "there is no evidence or shift on the part of the lender to evade the statute against usury, under or behind which the law will not look, in order to ascertain the real nature of the transaction."

However, when it is found that the lender had no usurious intent and was ignorant of the fact or facts constituting usury, an intent to charge usury will not be imputed to him, because the borrower to whom has been entrusted the execution of the note and mortgage securing the loan has fraudulently drawn them in such manner as to avoid liability on the ground of usury.

In the instant case, appellee placed faith and confidence in appellant, M. R. Perry. She trusted him in the drawing of the note and mortgage and intended that they should be drawn in such manner as to evidence a loan of $450, with interest at the rate of 8 per cent. per annum. To permit Perry to defeat the collection of the amount due appellee on the ground of usury would be permitting him to take advantage of his own attempt to perpetrate a fraud.

It is evident that the execution of the notes for $15 each by appellants and their acceptance by appellee was not a satisfaction of the original obligation, but simply

an extension of the time of payment. Appellee did not intend to release her lien under the mortgage which had been executed by appellants.

The trial court found that there was $523.68 due appellee, this being the amount of principal and interest due to the date of the decree. Judgment was entered for this amount with interest thereon at the rate of 8 per cent. per annum from the date of the decree. It was further decreed that appellee had a second mortgage lien on the property described in the mortgage securing the loan which she had made to appellants. A foreclosure of the lien was decreed and the property ordered sold. No error being found in the record, the decree of the trial court is affirmed.