GARST *v.* GENERAL CONTRACT PURCHASE CORPORATION.

4-8163                                    201 S. W. 2d 757

Opinion delivered April 21, 1947.

Rehearing denied May 26, 1947.

*T. J. Gentry,* for appellant.

*Guy B. Reeves* and *Barber, Henry & Thurman,* for appellee.

GRIFFIN SMITH, Chief Justice. March 3, 1946, Garst signed Consolidated Motor & Aviation Company's conditional sales contract covering a Studebaker automobile. The *"bona fide* cash delivered price, including sales tax and extra equipment,'' was $843, with a cash payment of $300. At the same time Garst signed a retail buyer's order. It shows ''cash delivered price in Little Rock, $843; cash on delivery, $300; net balance due, $543.'' Supplementing these entries the following appears: ''Special notes, $45.99; balance, 15 monthly notes of $45.99 each; balance due, $543; rec. fee, etc., $146.85; grand total, $689.85.'' The purchaser signed a buyer's statement in which it was noted that the obligation would be carried by Commercial Credit Corporation.

Attached to the conditional sales contract, perforated for easy detachment, was Garst's negotiable note for $689.85 payable to Consolidated, providing for payment in fifteen monthly installments of $45.99, beginning April 6, 1946. This note was sold to General Contract Purchase Corporation.

March 26 following execution of the note and contract, Garst replied to a letter from Purchase Corporation. He acknowledged receipt of the Corporation's ''outline of time payment contract,'' saying, ''I am paying a usurious and unlawful rate of interest upon the balance of $543.''

Purchase Corporation responded April 2d, stating that the note was for $689.85. The "rates charged," it said, "were certainly within reason for a fifteen-months contract, for, as you know, this covers a considerable amount of insurance. . . . You may be quite certain that these charges are in no way unlawful."

Garst refused to pay the note maturing April 6th. In a letter dated April 10th Purchase Corporation told Garst it was not required to define the term "time price differential; [for], as we stated previously, this figure represents insurance, investigation charges, bookkeeping and legal cost of setting up your account." When the May note was not paid it was explained that the insurance premium was $36.25, finance company service charge $43.44, and that $67.16 was set up as a dealer's reserve fund "which is authorized as a protection against any loss due to repossession or damages to this collateral."

May 14 Purchase Corporation, invoking an acceleration clause contained in the note, declared all installments due; and on May 18 it brought an action of replevin, executed bond, and procured possession of the automobile, value of which was alleged to be $700.

In an answer and cross-complaint Garst alleged that his agreement was to pay $843 for the car; that interest charged exceeded the legal rate; that he had offered to pay the balance of $543; that the contract and note he signed were in blank, and that he relied upon the seller to fill in the agreed amount, but that instead of doing so an item of $146.85 was fraudulently inserted. He alleged that Consolidated had damaged him in the sum of $1,000; that Purchase Corporation's action in repossessing the car had injured him to the extent of $5,000, and he prayed judgment against U. S. F. & G. for $1,400, amount of the bond it had executed.

Appeal is from directed verdicts (1) for the plaintiff, Purchase Corporation, and (2) for the defendants named in the cross-complaint, Consolidated, and U. S. F. & G.

*First.*—The Court correctly directed the jury to find for Purchase Corporation. The note was negotiable, and there is no evidence that the assignee had knowledge of any infirmities. Garst admitted signing it, but insists that the monthly installment items of $45.99 were not on the document when he subscribed. He also signed the buyer's statement, in which it was said that the obligation would be carried by Purchase Corporation; hence he had actual notice that it would be transferred. This, however, was not controlling, since the note was negotiable.

Before usury can be sustained it must be shown that there was an agreement upon the part of the lender to receive, and on the part of the borrower to give, a greater rate of interest than ten percent for the use of money. *Citizens Bank* v. *Murphy,* 83 Ark. 31, 102 S. W. 697. In *Perry* v. *Shelby.* 196 Ark. 541, 118 S. W. 2d 849. it was held that while it is not necessary that both parties be informed as to the facts constituting usury, it is necessary that the lender have an intention to charge an illegal rate of interest, or that he be cognizant of the facts constituting usury. It was said in *Harper* v. *Futrell,* 204 Ark. 822, 164 S. W. 2d 995, 143 A. L. R. 235, that a conditional sales contract was not void because computations on an interest basis showed a greater charge than ten percent per annum. The carrying cost was not based on a loan of money, but was "a part of the purchase price which the purchaser agreed to pay."

The rule would be different if in fact the finance company actually advanced money to the purchaser and by subterfuge added items to disguise the transaction in order to realize more than the maximum permissible contract rate.

There is nothing in the testimony here sustaining appellant's position that Purchase Corporation knew there had been an unauthorized addition to the contract; hence as to it the judgment must be affirmed, notwithstanding a contention that form of the verdict and judgment was improper. It was, "We, the jury, find for the

plaintiff for possession of the automobile . . . or its value.'' It is argued that under this verdict, Purchase Corporation has a judgment for possession of the car and for the value. No objection to form was made when the jury was directed to return the verdict October 3d. Nothing was said in protest until October 14 when motion for a new trial was filed. The objection came too late, but judgment must be construed as one for possession; and not, in addition, for the value. Appellant has not been injured by failure of the jury to ascertain the value. Purchase Corporation alleged it was $700, and this was not denied.

*Second.*—It is urged in the brief that the entire transaction was void because, under OPA appraisement, $843 was the top price. Violation of the so-called ''ceiling'' was not alleged in the answer and cross-complaint. However, there was evidence that the maximum *cash* price was $843. It was not shown other than by appellant's unsupported assertion that no more could be charged if installment payments were allowed; nor is appellant in position to take advantage of this alleged overcharge. The point was not raised in the motion for a new trial.

*Third.*—Appellant's testimony, and that of his wife, present a question of fact in respect of the assertion that the price, whether cash or credit, was $843. While we know that in general practice time contracts with installment payments are higher than cash sales, yet in a particular case we do not have judicial notice that cash and credit price were not the same.

It is possible, but highly improbable, that Consolidated told Garst the sale price, whether for cash or on time, would be $843. Garst admits having discussed payments—whether the contract would run for twelve or fifteen months. He was told what the monthly payments would be—''forty, or perhaps forty-one dollars.'' This was for fifteen-months. If we should accept the maximum figures authorized by appellant, the balance would be $615—not $543, as he contends. It is therefore self-

evident that some authorization was given for completion of the contract through insertion of a definite amount.

Still, it cannot be said that a factual question was not presented. It follows that the judgment in favor of Consolidated must be reversed and the cause remanded with directions to permit this part of the controversy to be submitted to a jury.