THOMPSON *v.* MURDOCK ACCEPTANCE CORPORATION.

5-386                                   267 S. W. 2d 11

Opinion delivered April 12, 1954.

[Rehearing denied May 10, 1954.]

*S. L. White,* for appellant.

*Lowell W. Taylor* and *Owens, Ehrman & McHaney,* for appellee.

ROBINSON, J.    Appellant Gladys M. Thompson filed suit against James Hampton, doing business as Public Auto Company, and Murdock Acceptance Corporation, alleging she was charged a usurious rate of interest on the unpaid balance of the purchase price of an automobile.  Upon completion of the introduction of evidence by the plaintiff, the defendant Murdock Acceptance Corporation moved that the cause be dismissed due to insufficiency of the evidence to prove usury.  The motion was sustained, and plaintiff has appealed.

On the 11th day of October, 1952, which was subsequent to the decision in *Hare* v. *General Contract Purchase Corp.,* 220 Ark. 601, 249 S. W. 2d 973, James Hampton sold an automobile to appellant, and as part of the purchase price of $1,460.00 Mrs. Thompson delivered to him a used truck, paid $53.00 in cash, and signed a title-retaining contract for the unpaid balance.  Hampton

transferred this contract to appellee Murdock Acceptance Corporation. It shows an unpaid balance at the time of transfer of $1,244.04. Mrs. Thompson contends on appeal that the correct balance owed after the down payment, including interest at 10 per cent per annum, was $1,083.06; and that the difference of $160.98 is a usurious charge.

Appellant contends that in preparing the written contract, Hampton showed a balance due of $1,244.04 when in truth and fact the balance should have been $1,083.06. Appellant arrives at the total of $1,083.06 in this manner; she states that it was agreed she was to receive credit in the sum of $600.00 for the old truck traded in; that $53 was paid in cash which was to reduce an existing mortgage in the sum of $203 down to $150; and that in addition to allowing her $600 on the old truck, Hampton assumed the burden of paying off the $150 balance on the mortgage. She also says that she agreed to buy certain insurance for which the premium was $174.40 and that the interest at 10 per cent per annum is $101.66, and all of this considered together leaves a total of $1,083.06. She makes no contention in this court that the sale of the insurance was a device or scheme to evade the usury laws. The motion to dismiss was not in writing, but she did not object to the motion for that reason at the time it was made. Although Act 470 of 1949, Ark. Stats., § 27-1729 as amended, provides for a written motion challenging the sufficiency of the evidence, the party resisting the motion in the trial court would be in no position to complain here of the motion being oral when no objection had been made on that ground in the trial court.

Mrs. Thompson testified that she did not receive a copy of the contract which she signed at the time of the consummation of the transaction. Also she says it was in blank. However, she testified that she did receive an invoice and that it shows she was not allowed a credit of $600 on the old truck, but was allowed $490 thereon; and that the invoice further shows she owed a balance of

$1,244.04 instead of $1,083.06 which she claims is the correct amount.

According to Mrs. Thompson's version of the transaction, it was agreed she was to receive a total allowance of $750.00 on the old truck, $600.00 to be credited on the purchase price of the automobile, and payment by Hampton of a mortgage on the truck in the sum of $150.00—total $750.00. Actually she was allowed a credit of $490.00. The sale contract shows a total time price of $1,734.04, with $490.00 paid thereon at time of delivery, leaving a balance of $1,244.04 payable in 21 monthly installments of $59.24 each.

If Mrs. Thompson's conception of the transaction is correct that she was to receive a total credit of $750.00 on the truck traded in, and Hampton for the purpose of exacting interest greater than 10 per cent per annum prepared the contract in a manner calculated to deceive the purchaser and thereby charge more than the legal rate of interest, it would be usury. In *Strickler* v. *State Auto Finance Company,* 220 Ark. 565, 249 S. W. 2d 307, this court quoted with approval from *Wilson* v. *Whitworth,* 197 Ark. 675, 125 S. W. 2d 112, as follows: "This constitutional inhibition cannot be avoided by any trick or device, and the courts will closely scrutinize every suspicious transaction in order to ascertain its real nature; and if it appears that the contract is merely one for the loan of money with the intention on the part of the lender to exact more than the lawful rate of interest, the contract will be declared usurious and void."

Counsel for appellee makes a reasonable and plausible explanation of the transaction going to show that no usurious rate of interest was charged; but the weakness in the argument is that it is assumed Hampton's understanding of the transaction was that a net credit of $450.00 instead of $750.00 was to be allowed on the truck traded in. However, there is no evidence of what Hampton understood, and Mrs. Thompson's evidence is sufficient to make out a *prima facie* case of usury. In *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225, this court said:

"What, then, is the effect of a demurrer to the evidence or a similar pleading in jurisdictions recognizing that practice? The question may arise either in equity cases, where the chancellor is the arbiter of the facts, or in cases tried at law without a jury, where also the trial judge decides all issues of fact. By the overwhelming weight of authority it is the trial court's duty, in passing upon either a demurrer to the evidence or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence when so considered fails to make a *prima facie* case."

Appellee's motion to dismiss at the conclusion of the introduction of appellant's evidence should have been overruled. Therefore the cause is reversed.

Mr. Justice WARD dissents.

WARD, J. My dissent to the majority opinion in this case is based upon the following.

*First.* Apparently it is admitted that appellant's contention of usury is based on the charge that Hampton allowed her as a credit on the truck which she traded in only the sum of $490 whereas she understood and he agreed to allow her a credit of $653. If appellant takes the position that Hampton tricked or deceived her in the matter mentioned then I agree that, if true, this would constitute the basis for the charge of usury. We will discuss this eventuality later. However if appellant takes the position that there was an honest mistake made then she only had the right to sue Hampton for the difference. The record makes it clear that she is not pursuing that remedy. The transcript shows:

"THE COURT: This action is not founded on anything but usury.

Mr. White (attorney for appellant): That is right."

Moreover, if the discrepancy in the amount of credit claimed was a result of a mistake an action in usury

would not lie. In *Perry* v. *Shelby,* 196 Ark. 541 (at page 546), 118 S. W. 2d 849, the court said:

"While it is not necessary that both parties be cognizant of the fact or facts constituting usury, it is necessary that the lender have an intention to charge a usurious rate of interest or be cognizant of the fact or facts which constitute usury."

This court has many times held that a mistake can not be the basis for a suit in usury. *Baxter* v. *Jackson,* 193 Ark. 996, 104 S. W. 2d 202; *Simpson* v. *Smith Savings Society,* 178 Ark. 921, 12 S. W. 2d 890; *Temple* v. *Hamilton,* 178 Ark. 355, 11 S. W. 2d 465; *Gilliam* v. *Peebles,* 144 Ark. 573, 223 S. W. 14; *Aldrich* v. *McClay,* 75 Ark. 387, 87 S. W. 813; *Jarvis* v. *Southern Grocery Company,* 63 Ark. 225, 38 S. W. 148; *Garvin* v. *Linton,* 62 Ark. 370, 35 S. W. 430 and 37 S. W. 569; *German Bank* v. *DeShon,* 41 Ark. 331.

*Second.* If then no question of a honest mistake is involved appellant must take the position that Hampton in some way induced her to make the trade by deceiving her into thinking she was getting more than $490 credit. Appellant's own testimony conclusively refutes any idea that she was deceived or that she did not know when she made the trade that she was getting credit for only $490. Although appellant and her husband signed an affidavit, shown in the record, stating that Hampton never delivered to either of them "any so called car invoice in connection with the sale of the automobile" and although she repeated this contention in parts of her testimony, when pressed for a more specific answer as to what happened at the time the sale was made she said: "That was Saturday night. He [Hampton] gave me a little white sheet of paper, which was an invoice, had a lot of figures on it, but I didn't pay much attention to the figures. Actually I was so excited about getting the car . . . and I guess I was careless in not going over the figures, but we did go over the invoice after we went for a ride to try out the car and after I went over the figures on the invoice he didn't give me $600 trade in."

Again after being further pressed for details regarding "the little white paper" appellant testified:

"Q. What did the invoice that you received show . . .?

A. It did not show any trade in allowance.

Q. I understood you stated it showed you were allowed a less amount on the trade in than you thought you were entitled to receive?

A. $490 I believe it showed."

It appears from the next to the last paragraph in the majority opinion that this case is being reversed because appellee introduced no evidence to show what credit Hampton meant to give. It is there stated: "but the weakness in the argument is that it is assumed Hampton's understanding of the transaction was that a net credit of $450 instead of $600 was to be allowed on the truck traded in. However there is no evidence of what Hampton understood and Mrs. Thompson's evidence is sufficient to make a *prima facie* case of usury." I cannot understand why the evidence leaves anything to be *assumed* in regard to the credit Hampton meant to give. It is true that he did not testify in this case but that was not necessary since appellant, as shown above, admitted that Hampton gave her a written statement showing the credit which he, Hampton, was allowing her. Since the testimony as to the $490 credit is in the record it makes no difference whether it was produced by Hampton or appellant, except I would say that an admission by appellant has stronger probative value than a statement made by Hampton.

The trial court heard all of appellant's testimony and ruled that she had not made out a *prima facie* case, and I submit that he was absolutely correct.