GENERAL CONTRACT CORPORATION *v.* WILLIAM H. DODGE.

5-380                                    266 S. W. 2d 816

Opinion delivered April 12, 1954.

*Rector, Cockrill, Limerick & Laser,* for appellant.

*John K. Shamburger,* for appellee.

J. SEABORN HOLT, J.  This is a case of alleged usury and arises out of a Conditional Sales Contract for the purchase of a Pontiac automobile by appellee, Dodge, on May 9, 1952, from the Dutch O'Neal Motors, Inc.,—not a party here.  The transaction occurred prior to the effective date of the *caveat* (June 30, 1952) in the case of *Hare* v. *General Contract Purchase Corporation,* 220 Ark. 601, 249 S. W. 2d 973.

Appellee alleged in his complaint, in effect, that on May 9, 1952, he purchased the car in question from Dutch O'Neal Motors, Inc. for $2,200, on which he made a down payment of $767, leaving an unpaid balance of $1,433, that at the time he signed a Conditional Sales Contract under which he was supposed to pay 5% on the unpaid balance, that later, after receiving a copy of the contract, he learned that a purchase price of $2,400 with an interest charge of $395 was stated therein, and an insurance premium charge of $162 on which appellant received a commission as agent and that the transaction was usurious and fraudulent.  He asked that the sales contract and note be cancelled and title to the automobile vested in him.

O'Neal Motors answered separately with a general denial, specifically pleaded that the contract was a true time sales transaction and pleaded *stare decisis* as a complete defense.  A nonsuit was taken as to it.  General Contract Corporation answered with a general denial and also alleged it was a true time sales contract and *stare decisis* as a complete bar.  In a cross complaint, appellant, General Contract Corporation, alleged default in making monthly payments by appellee, that it was the

owner of the car of the value of $2,000, and prayed for judgment for its possession or value.

Trial resulted in a decree for appellee, Dodge. The decree recited: ''The court further finds as a matter of fact that $2,200 was the selling price of the Pontiac automobile. That there was credited on the $2,200, $767, as a down payment, leaving a balance of $1,433; that an insurance policy was issued protecting plaintiff and defendants for collision or upset; the cost of insurance being $162, leaving a balance to be financed of $1,595; that plaintiff was charged on such balance of $1,595, interest far in excess of 10% per annum.

''That actually this transaction was a loan of money from General Contract Corporation to plaintiff and a sale of personal property by Dutch O'Neal Motors, Inc. to plaintiff and that the contract showing a total price of $2,795 was a device to cover usury, and a fraud as to plaintiff. That there was no *bona fide* credit price or time sale and that the whole scheme was one to evade and avoid the constitutional mandate against usury.

''That the note and contract should be declared void and that the lien securing same should be invalidated and the cloud on plaintiff's title to the Pontiac automobile be removed.''

On the record presented, we hold that this case is governed by our opinions in *Crisco* v. *Murdock Acceptance Corp.*, 222 Ark. 127, 258 S. W. 2d 551, and *Aunspaugh* v. *Murdock Acceptance Corp.*, 222 Ark. 141, 258 S. W. 2d 559, wherein the facts were substantially similar.

It is undisputed that the transaction here was consummated on May 9, 1952, prior to the finality of our decision in the Hare case, above. The sales contract shows purchase by appellee of the car in question from Dutch O'Neal Motors, Inc. ''Time differential price (credit purchase price)—$2,795.—Down payment, cash—$767,'' payable $84.50 on or before June 24, 1952, and $84.50 on the 24th of each month thereafter. The bottom portion of the face of the instrument is a note signed by

appellee, dated May 9, 1952, for $2,028, payable to the dealer in twenty-four consecutive monthly installments of $84.50 beginning June 24, 1952, with provision for acceleration of balance upon default of any installment. The reverse of the sales contract shows assignment by the dealer with warranty of validity of the instrument, that it was read by appellee and that all statements were true, etc.

A Retail Buyers Order dated May 9, 1952, signed by appellee contains the following recital: "Cash delivered price in North Little Rock—$2,421.—Cash on delivery—$767.—Bal. 24 notes of $84.50 each starting 45 days—$1,633."

Appellee, a licensed attorney, admitted signing the sales contract here in question. He intended to purchase on a time, or credit, basis and was credited with a down payment of $767 and agreed to pay twenty-four monthly payments of $84.50 each. He testified: "A. That was my agreement to pay twenty-four notes at $84.50, and I just told you that $767, that is $600 plus $167, I knew I was getting credit for that, that is right. * * * It was my understanding I was to pay twenty-four notes at $84.50. That would total up to $2,200 plus insurance, plus 5% interest. That was it. As far as those additional figures in there, I had no understanding of that at all."

The transaction here appears to have been consummated under the accepted practice in this State prior to the *Hare* case, above, and in accordance with our holdings in the *Crisco* v. *Murdock Acceptance Corp.* and *Aunspaugh* v. *Murdock Acceptance Corp.* cases, above, the decree must be reversed.

It could serve no useful purpose to reiterate what we said in those cases. Accordingly, the decree is reversed and the cause remanded with directions to enter a decree consistent with this opinion.