SLOAN *v.* SEARS, ROEBUCK & CO.

5-1393                                    308 S. W. 2d 802

Opinion delivered December 23, 1957.
[Rehearing denied January 27, 1958.]

*James L. Sloan, pro se, Tom Gentry* and *Thorp Thomas,* for appellant.

*Robert M. Wood, Atlanta, Ga.; Eichenbaum, Scott & Miller,* for appellee; *James M. McHaney, of Owens, McHaney, Lofton* and *McHaney, amicus curiae.*

SAM ROBINSON, Associate Justice.   The appellee, Sears, Roebuck and Co., sold a garden tractor and four automobile tires to appellant, James L. Sloan.   The price of the tractor was $295.58, including sales tax. Apparently a sales ticket was made out for that amount. The four tires came to $111.80; $20.00 was allowed on

old tires traded in, leaving $91.80; federal tax of $4.36 was added to that amount, and a sales tax of $2.24, making a total for the tires, including tax, of $98.40. This amount, added to the price of the tractor, as shown on the face of the written contract, is ''Total Cash Price $393.98''. Added to that sum is what is designated as ''Carrying Charge $37.17'', making a total of $431.15''. There was a cash payment of $40.00, leaving a balance of $391.15. This sum was payable in monthly installments of $22.00. The ''Carrying Charge'' amounts to more than 10 per cent per annum.

The issue is whether the transaction is usurious. The trial court held there was no usury, and Sloan has appealed. There does not appear to be any substantial dispute as to the facts.

It is appellee's contention that our usury laws have no application to a sale of merchandise on credit; that such laws apply only to a loan of money and to an amount charged by a creditor for allowing additional time to pay a debt after it has become due.

Article 19, Section 13, of the Constitution of Arkansas of 1874 provides:

''All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law; *  *  *''

Pursuant to this constitutional directive, the very first year following the adoption of the 1874 Constitution, the General Assembly adopted Act 56 of 1875. It provides:

''SECTION 1  (Ark. Stat. § 68-602). The parties to any contract, whether the same be under seal or not, may agree in writing for the payment of interest not exceeding ten per centum per annum on money due or to become due.

''SECTION 2 (Ark. Stat. § 68-603). No person or corporation shall, directly or indirectly, take or receive in money, goods, things in action, or any other valuable

thing, any greater sum or value for the loan or forbearance of money or goods, things in action, or any other valuable thing, than is in section one of this act prescribed.

"SECTION 3 (Ark. Stats. § 68-608). All bonds, bills, notes, assurances, conveyances, and all other contracts or securities whatever, whereupon or whereby there shall be reserved, taken or secured, or agreed to be taken or reserved, any greater sum, or greater value for the loan or forbearance of any money, goods, things in action, or any other valuable thing than is prescribed in this act, shall be void."

Act 39 of the Acts of Arkansas of 1887 (Ark. Stat. § 68-609) provides:

"Every lien created or arising by mortgage, deed of trust or otherwise, on real or personal property, to secure the payment of a contract for a greater rate of interest than ten (10) per centum per annum, either directly or indirectly, and every conveyance made in furtherance of any such lien is void; and every such lien or conveyance may be cancelled and annulled at the suit of the maker of such usurious contract, or his vendees, assigns or creditors. *  *  *"

The constitutional interdiction that "all contracts for a greater rate of interest than ten percent per annum shall be void" is not limited to loans of money or to debts after they once become due. If that had been the intention of the framers of the Constitution, no doubt the wording would have been explicit in that regard and would have provided "no contract for the loan of money", etc. It is clear that the Legislature did not construe Art. 19, § 13, of the Constitution as being so limited, because the aforementioned act of 1875, § 1 (Ark. Stat. § 68-602), provides that interest, not exceeding 10 per cent, may be charged on any contract "due or to become due".

Appellee contends that "forbearance" means an extension of the time to pay a debt after it becomes due. Section 68-602, quoted above, settles the question of the

meaning of forbearance. The statute provides: "* * * due or to become due." "Forbearance" as used in the act simply means that the person to whom the money is owed waits for all or part of the money after the consummation of the contract in which the money is involved. The seller foregoes payment in cash and waits for all or part of his money. In the early case of *German Bank* v. *DeShon,* 41 Ark. 331, it is said:

"* * * 'All contracts' include bonds, bills, notes and all other contracts, verbal and written, whereby a rate of interest greater than ten per centum per annum is reserved, taken or secured, or agreed to be taken or reserved, as fully and completely as if they had been severally and particularly enumerated in the constitution and declared void."

Over a considerable period of time this court approved contracts for the sale of merchandise where interest exceeded 10 per cent per annum. Finally, in 1952, there was decided the case of *Hare* v. *General Contract Purchase Corp.,* 220 Ark. 601, 249 S. W. 2d 973. There it was said:

"In a long line of cases, we have permitted the seller, under one guise or another, to do exactly what was done in the case at bar, and we have permitted the transferee of the paper to recover in just such a situation. Some of such cases are: *Garst* v. *General Contract Purchase Corp.,* 211 Ark. 526, 201 S. W. 2d 757; *Harper* v. *Futrell,* 204 Ark. 822, 164 S. W. 2d 995, 143 A. L. R. 235; *General Contract Purchase Corp.* v. *Holland,* 196 Ark. 675, 119 S. W. 2d 535; *Cheairs* v. *McDermott Motor Co.,* 175 Ark. 1126, 2 S. W. 2d 1111; *Standard Motors* v. *Mitchell,* 173 Ark. 875, 298 S. W. 1026, 57 A. L. R. 877; and *Smith* v. *Kaufman,* 145 Ark. 548, 224 S. W. 978."

We then went on to say that the case had to be affirmed on the strength of the previous holdings, but added:

"*Caveat.* But the time has come when we must reexamine these holdings, so we now give the public a

*caveat* that the effect of transactions, such as in the case at bar, may impinge on the constitutional mandate against usury, and transactions entered into after this appeal becomes final, may be subjected to the taint of usury with the aforementioned decisions affording no protection. * * *"

Following the *Hare* case, many cases arose involving the question of usury. In those cases where the contract was made prior to the decision in the *Hare* case, we have uniformly held that the rule announced in the old cases decided prior to the *Hare* case applied. *Crisco* v. *Murdock Acceptance Corp.,* 222 Ark. 127, 258 S. W. 2d 551; *Aunspaugh* v. *Murdock Acceptance Corp.,* 222 Ark. 141, 258 S. W. 2d 559; *Perry* v. *Duncan,* 222 Ark. 160, 258 S. W. 2d 560; *Universal C. I. T. Credit Corp* v. *Crossley,* 222 Ark. 200, 258 S. W. 2d 562; *Murdock Acceptance Corp.* v. *Clift,* 222 Ark. 313, 259 S. W. 2d 517; *Pacific Finance Co.* v. *Tinsley,* 222 Ark. 723, 262 S. W. 2d 282; *Hoover* v. *Murdock Acceptance Corp.,* 223 Ark. 181, 264 S. W. 2d 838; *General Contract Corp.* v. *Dodge,* 223 Ark. 476, 266 S. W. 2d 816.

But in appeals where the transaction occurred subsequent to the *Hare* case, we have held that contracts providing for interest greater than 10 per cent per annum are controlled by Art. 19, § 13, of the Constitution and are void.

*O'Brien* v. *Atlas Finance Co.,* 223 Ark. 176, 264 S. W. 2d 839, involved a transaction between a borrower and a lender of money. No sale was involved, and the Court was of the opinion that perhaps the *Hare* case, which involved the sale of an automobile, could be construed as applying only to sales. In the *O'Brien* case we said:

"The *caveat* in the *Hare* case was not broad enough to apply to a transaction like the one in the case at bar; but the present *caveat* is to apply to all kinds of loans. * * *"

In the case at bar appellee contends that the *caveat* in the *Hare* case is not broad enough to apply to sales transactions.

In *Thompson* v. *Murdock Acceptance Corp.*, 223 Ark. 483, 267 S. W. 2d 11, we held that the court erred in sustaining the finance company's motion that the case be dismissed at the completion of plaintiff's testimony. We held that according to the evidence introduced up to that point, Mrs. Thompson had made out a case of usury. Our decision was based on the fact that the evidence showed that more than 10 per cent per annum had been charged by the seller of the automobile. The fact that the note had been transferred to the Murdock Acceptance Corporation was not considered as material.

And in *Public Loan Corp. of Fayetteville* v. *Peterson*, 224 Ark. 22, 271 S. W. 2d 353, in speaking of the *Hare* case we said:

"* * * But there we overruled several earlier decisions which had sanctioned an artificial distinction between a cash sale and a credit sale. * * *"

The cases we overruled were mostly contracts for the sale of goods, wares and merchandise. See cases cited in *Hare* v. *General Contract Purchase Corp., supra*.

In *Universal C. I. T. Credit Corp.* v. *Stanley*, 225 Ark. 96, 279, S. W. 2d 556, it was held that a usurious rate of interest was charged on the balance owed on the purchase price of an automobile. It is true the seller had transferred the paper to a credit company, but there is nothing whatever in the opinion to indicate that the same transaction would not have been held usurious if the seller had kept the paper.

The facts and circumstances existing at the instant the contract is consummated determine whether it is usurious. The test is not whether the seller at a later date transfers the paper to a finance company.

*General Contract Corp.* v. *Duke*, 223 Ark. 938, 270 S. W. 2d 918, involved the sale of an automobile, and there we said:

"Our cases hold that the transaction is to be judged at the time the contract is entered into, and not thereafter. * * *"

In *Universal C. I. T. Credit Corp.* v. *Avery,* 225 Ark. 190, 280 S. W. 2d 229, we said:

"The principal question in this case is whether a certain conditional sales contract, now attacked by the appellee for usury, was executed before or after the decision became final in *Hare* v. *General Contract Purchase Corp.,* * * * That decision overruled a series of earlier cases but stated that the new rule would apply only to transactions entered into 'after this opinion becomes final'. The contract now before us would have been valid under the theory that formerly prevailed but would be usurious and void under the doctrine announced in the *Hare* case. * * *" (emphasis supplied)

As heretofore pointed out, the cases overruled by the *Hare* case were mostly those in which a seller was allowed to add a sum in excess of 10 per cent to the sales price as a carrying charge, differential or interest, and had been held to be non-usurious.

In the very recent case of *Holland* v. *C. T. Doan Buick Co.,* 228 Ark. 340, 307 S. W. 2d 538, it appeared that no finance company was involved. Doan sold the car and financed the transaction himself. Perhaps he later sold the note to a bank, but the decision of this Court that the transaction was usurious was in no way based on the fact that a bank may have bought the note.

The *Hare* case and the many decisions of this Court since that case make it clear that credit sales as such, as distinguished from cash sales, have just about disappeared. In the *Hare* case it was said:

"Buying at a credit price, as distinguished from a cash price, has largely disappeared in fact, but is being used as a cloak for usury in many cases by such words as 'time price differential', or some other such language. * * *"

This language in the *Hare* case was quoted in *Cunningham* v. *Chamblin,* 227 Ark. 389, 299 S. W. 2d 89. Even in the old case of *Ford* v. *Hancock,* 36 Ark. 248, it is clearly stated that if a sale be really

made on a cash estimate and time be given to pay the same, and an amount is assumed to be paid greater than the cash price, with legal interest, would amount to, this is an agreement for forbearance that is usurious. There can be no doubt about the sale in the case at bar being based on a cash estimate. Tickets were made out showing the cash price; the cash price was named in the contract; and sales tax was paid only on the cash price.

Appellee contends that the *caveat* in the *Hare* case applies only to a transaction where a loan of money is involved and that it has no application between the seller and the buyer where a credit sale is involved, which is based on a cash price with an additional sum added as interest, differential, carrying charge, or whatever it may be called. But there have been several cases since the *Hare* case which clearly show that this Court has not construed the *caveat* in that case as applying only to transactions where a finance company is involved. Nor has the *caveat* been so construed by the public in general.

Following the *Hare* case an attempt was made to amend the Constitution. A petition containing the proposed amendment was widely circulated. Thousands of signatures were obtained thereto. It was proposed that the Constitution should be changed to provide: "Nor shall the difference between a cash sale price and an agreed upon time sale price be considered interest." Undoubtedly it was considered by all interested persons that the *Hare* case was a warning that usury could be involved in the sale of merchandise on credit where an amount totalling more than 10 per cent per annum was added to the agreed cash price. The proposed amendment was not allowed to go on the ballot because of an insufficient ballot title. *Bradley* v. *Hall*, 220 Ark. 925, 251 S. W. 2d 470. In that case we said:

"Thus the proposed amendment has a two-fold purpose: (a) It would legalize service charges that have previously been regarded as usurious, and (b) it would legalize credit price differentials that have previously been regarded as usurious."

It is hard to believe that anyone would consider that a loan of money was being referred to as "a credit price differential".

In *Crisco* v. *Murdock Acceptance Corp.*, 222 Ark. 127, 258 S. W. 2d 551, more than 10 per cent was charged on the balance due on an automobile. We were urged to recall the *caveat* in the *Hare* case, but we declined to do so and in effect reaffirmed the proposition that the cases cited in the *Hare* case could not be relied on by merchants as authority for a charge of more than 10 per cent per annum for extending credit in the sale of merchandise.

In *Jones* v. *Jones*, 227 Ark. 836, 301 S. W. 2d 737, we said:

"This is a suit by the appellee to cancel an assertedly usurious contract by which he bought a car from the appellant, an automobile dealer . * * *"

It appears that this was a transaction between the seller and the buyer only. No finance company or loaning agency was involved. The trial court held that a usurious charge had been made, and the decree was affirmed by this Court.

In *Cunningham* v. *Chamblin*, 227 Ark. 389, 299 S. W. 2d 89, Cunningham, the buyer, was an individual, and the seller was W. D. Chamblin, doing business as the Chamblin Sales Company. There the question of usury was involved. The court had rendered a decree for the defendant sales company on the theory that the plaintiff had not made out a case with his evidence in chief. We reversed, saying:

"When viewed in the manner required under the statute, the appellant's proof was sufficient to make a *prima facie* case of usury and the cause should be reversed for further development * * *"

No finance company was involved; no loan of money was involved. There was the question of whether the seller of an automobile had charged more than 10 per cent on the deferred payments.

In *Whiddon* v. *Universal C. I. T. Credit Corp.*, 227 Ark. 824, 301 S. W. 2d 567, the decree to the effect that a usurious rate of interest was not charged was allowed to stand because an honest mistake was made involving the premium on insurance. Although a finance company was involved, there is nothing in the opinion to indicate that the presence of the finance company in the case had anything to do with the outcome of the litigation. The case was decided in favor of the seller of the automobile solely on the ground that an honest mistake had been made.

Unfortunately, in the case at bar the seller happens to be a company bearing a splendid reputation for its dealings with the public; the amount of interest charged in excess of 10 per cent per annum, permitted by the Constitution, is not great, but if we should hold that this contract is not usurious, it would be a precedent by which all the sellers of merchandise of every kind and description could add any amount to the cash price as interest, carrying charge, differential or what not, that those whom the Constitution and statutes were designed to protect would of necessity agree to pay. And Art. 19, § 13, of the Constitution, prohibiting usury, would amount to nothing more than a scrap of paper. The quotation given by Judge Frank Smith in *Byler* v. *State*, 210 Ark. 790, 197 S. W. 2d 748, is peculiarly applicable:

"It may be asked therefore, what difference it makes that this relationship existed * * * The answer is, 'Twill be recorded for a precedent and many an error by the same example will rush into the state. It cannot be'."

It is the duty of this Court to uphold the Constitution, and therefore we must reverse the judgment in this case, because the contract involved provides for a greater amount of interest than is allowed by the Constitution.

Appellee further contends that even if the contract is declared void, the title remains in the seller. We rejected this theory in *Universal C. I. T. Credit*

*Corp.* v. *Avery,* 225 Ark. 190, 280 S. W. 2d 229, *citing Universal C. I. T. Credit Corp.* v. *Stanley,* 225 Ark. 96, 279 S. W. 2d 556. *See,* also, Ark. Stat. § 68-609.

Reversed.

HOLT, J., dissents.

J. SEABORN HOLT, J., dissenting. I am so firmly convinced that the undisputed facts in this case show that it was purely a *bona fide* credit sale, that both parties to the sales contract so understood and intended it, and made it in good faith—that I cannot bring myself to agree with the majority that usury was involved.

To constitute usury we are all agreed there must appear to be a charge of more than 10% for the loan or forbearance of money. The words "loan" and "forbearance" are not synonymous. Appellant concedes that there was no actual loan applied for or involved, either directly to appellant or through any third party or finance company, and the trial court so found. Therefore, if appellant is to prevail he must show that there was a usurious forbearance in the case at bar. "Usury is a corrupt agreement for more than the legal rate of interest on a loan of money, or for the forbearance of a debt  *  *  *  Therefore where the intention is not apparent, it is a question for the jury to determine whether it was a *bona fide* credit sale, or a device to cover usury," *Ford* v. *Hancock,* 36 Ark. 248. *Black's Law Dictionary* (4th Ed. 1951) defines *Usury:* "A profit greater than the lawful rate of interest, intentionally exacted as a bonus, for the forbearance of an existing indebtedness or a loan of money,  *  *  *  " and defines *Forbearance:* "Act by which creditor waits for payment of a debt due him by debtor after it becomes due.  *  *  *  A delay in enforcing rights.  *  *  *  Indulgence granted to a debtor.  *  *  *  Refraining from action. The term is used in this sense in general jurisprudence, in contradistinction to 'act'.  *  *  *  Within usury law, term signifies contractual obligation of lender or creditor to refrain,

during given period of time from requiring borrower or debtor to repay loan or debt then due and payable."

Appellant is a practicing attorney, he knew what he was doing when he signed the contract in question. Appellee is engaged in the selling of merchandise at retail, is not in the loan business, and there was no third party such as a loan agency or finance company involved here. As I see it, Sloan bought the merchandise purely on a credit sale, there was no pre-existing debt at the time of the transaction. The trial court found that the transaction was a *bona fide* sale on credit. I think the preponderance of the testimony supports that finding.

In each case, whether there was an intent to collect usury depends upon the facts. In our recent case *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973, we said: "It is not usury for one who sells a piece of property on credit, to contract for a higher price than he would have sold it at for cash. If the intention be, in fact, to sell on credit, he has the right to fix a price greater than the cash price, with legal interest added; but if the sale be really made on a cash estimate, and time be given to pay the same, and an amount is assumed to be paid greater than the cash price, with legal interest, would amount to, this is an agreement for forbearance that is usurious. Therefore, where the intention is not apparent, it is a question for the jury to determine, whether it was a *bona fide* credit sale, or a device to cover usury. *Tyler on Usury*, 92. * * * (1) We leave unimpaired the doctrine that a seller may, in a *bona fide* transaction, increase the price to compensate for the risk that is involved in a credit sale. But there may be a question of fact as to whether the so-called credit price was *bona fide* as such, or only a cloak for usury. (2) If the seller, whether he has quoted two prices to the purchaser or not, subsequently transfer the title documents to an individual or company which is engaged in the business of purchasing such documents, at a price which permits the transferee to obtain more than a return of 10% on its investment, then a question of fact

arises as to whether the seller increased his cash price with the reasonable assurance that he could so discount the paper to such individual or finance company. If that reasonable assurance existed, then the transaction is in substance a loan, and may be attacked for usury. (3) When finance companies or purchasers of title paper supply dealers with a set of forms and a schedule for credit price increases, such will tend to show that the dealer had reasonable assurance that such finance company or purchaser of the paper would take the paper at such discount.''

As indicated, in the present case there is absent any loan or finance company, or any interested third party. What we said in *Blake Brothers* v. *Askew & Brummett,* 112 Ark. 514, 166 S. W. 965, announces the governing rule in this state and applies with equal force here. We there said: ''Appellants also testify that they paid Askew and Brummett for goods which they purchased from them, a greater amount than 10 per cent added to the cash price of the goods. Askew & Brummett were retail dealers in merchandise, and sold goods mainly on a credit. It was the intention of the parties at the time the mortgage was executed that Askew & Brummett should furnish them with supplies, and that the goods should be sold on a credit. Askew & Brummett had a right to sell goods on a credit for a higher price than they would have sold them for cash. It is true that they sold them to appellants at a profit greater than 10 per cent over the price they were usually sold for cash, but there is nothing to show that this was done to evade the usury law. On the contrary, the evidence shows that it was done in good faith, for the purpose of making a profit on the goods sold. Appellees testified that they sold the goods to appellants at the usual price they sold goods to their customers generally on a credit, and this statement is not denied by appellants. Therefore, there was no usury in this transaction.''

In the present case it appears undisputed that the credit terms offered Sloan were available to all customers

and had been openly held out as available to customers for more than a score of years. I think all the cases relied on by the majority are clearly distinguishable on the facts—all, in effect, involved an interested loaning agency or a third party. As indicated, here we are concerned only with the alleged usurious forbearance of money, which can only come into play when there is a pre-existing debt. While I feel certain of the soundness of my views, I feel doubly certain that scores of retail merchants throughout Arkansas are not only going to be surprised but shocked at the far reaching effect of the majority decision.

I would affirm the decree as not being against the preponderance of the evidence.