KAROLEY v. REID.

5-438                                                  269 S. W. 2d 322

Opinion delivered May 31, 1954.

[Supplemental opinion on rehearing delivered July 5, 1954.]

*Richard W. Hobbs* and *B. W. Thomas,* for appellant.

*Glenn G. Zimmerman* and *William G. Fleming,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Mary E. Karoley, instituted this suit against appellee, John D. Reid, for specific performance of a contract. Trial resulted in a dismissal of the complaint and denial of the relief sought on the ground that the alleged contract was without consideration and void. Although appellee offered no proof and the testimony was not as fully developed as it might have been, there is no controversy about the following facts which may be gleaned from the pleadings and the evidence offered by appellant.

Appellant and appellee began living together in the state of Ohio in October, 1940, at which time appellant was legally married to Jack Karoley. This illegal cohabitation continued in Ohio until 1950 when the parties moved to Little Rock, Arkansas, where a home was purchased and title thereto taken in the names of "John D. Reid and Mary E. Reid, his wife." The illicit relation-

ship continued in Little Rock until September, 1951, when the parties separated and appellant moved to Hot Springs, Arkansas, where she obtained a divorce from Jack Karoley in October, 1951. At appellee's suggestion it was agreed that the parties permanently sever their illicit relationship, and on November 13, 1951, they executed and appellee duly acknowledged the following instrument:

## "AGREEMENT

"THIS AGREEMENT made and entered into this 13th day of November, 1951, by and between John D. Reid of Little Rock, Arkansas, hereinafter known as party of the first part and Mary E. Karoley of Hot Springs, Arkansas, hereinafter known as party of the second part, WITNESSETH:

"WHEREAS, party of the first part and party of the second part are now joint owners of real estate located in Little Rock, Arkansas, and personal property, also located in Little Rock, Arkansas:

"NOW IN CONSIDERATION of party of the second part relinquishing all of her right, title and interest unto said real estate and personal property and in further consideration of love and affection, party of the first part hereby agrees to pay and party of the second part hereby agrees to accept in lieu of all her interest to the above mentioned property, the sum of Two Hundred and Fifty Dollars ($250.00) payable each and every month by party of the first part to party of the second part for the rest of her natural life: and

"WHEREAS, party of the second part is now in ill health and under treatment by Dr. Ludolf Bollmeier of Hot Springs, Arkansas, party of the first part hereby agrees to pay, in addition to the $250.00 per month for life, all of the charges made by the above mentioned Ludolf Bollmeier and any other medical expense incurred during the duration of her present illness: and

"WHEREAS, party of the second part hereby agrees to execute a deed to the above described real es-

tate at any time desired by party of the first part after the signing of this instrument: and

"WHEREAS, the exact future address of the party of the second part is unknown at this time, until further notice by party of the second part to party of the first part, it is mutually agreed that the above mentioned $250.00 per month shall be payable on the first of each month, the first payment to be due on the 1st day of the month after the signing of this agreement and continue for the life of party of the second part: and

"WHEREAS, it is mutually agreed by and between the parties hereto that should party of the first part die prior to the death of party of the second part, party of the second part shall be paid a lump sum of Ten Thousand Dollars ($10,000.00), net to her, from the estate of party of the first part: and

"WHEREAS, it is mutually agreed by and between all parties hereto that should party of the second part marry prior to the termination of this agreement, her marriage shall act as an automatic termination and this agreement shall have no more force and effect.

"WITNESS our hands and seals this 13th day of November, 1951."

Following the execution of the contract, appellant executed a deed conveying her interest in the Little Rock property to appellee who made the monthly payments of $250 as provided in the contract until September, 1952, when he refused to make further payments.

Appellee filed a cross-complaint in which he alleged that the continued illicit relationship and execution of the contract were induced by the fraudulent misrepresentations and threats of appellant. There was no proof of such allegations and they were stoutly denied by the appellant, who testified that the separation of the parties and terms of the written contract were suggested and dictated by appellee. Her testimony was corroborated and it was further shown that she was mentally and physically ill at the time and that appellee paid the fees

of the attorney who drafted the contract and represented appellant in the divorce suit. Appellant also testified that the property mentioned in the contract cost $22,500, and that the parties owned an equity therein of about $10,000, and that the personal property included certain "first editions" which belonged to her personally. It is also undisputed that the parties held themselves out as husband and wife to their friends, associates and the public generally throughout the eleven-year period of co-habitation.

The controlling issue on this appeal is whether there was sufficient consideration to support the contract of the parties. The able chancellor concluded that the contract was based solely on the illicit relationship which made it without consideration. The authorities generally are in agreement on the proposition that contracts in consideration of the commencement or future continuance of illicit relations between the parties are illegal and void as being against public policy and morality. 17 C. J. S., Contracts, § 266a. However, there is considerable division of authority on the question of the validity of contracts in consideration of past illicit relations. Some courts hold such contracts void or lacking in consideration while others hold them valid and founded on a good consideration. 12 Am. Jur., Contracts, § 176; 17 C. J. S., Contracts, § 266b. We find it unnecessary to a determination of the present controversy to choose between these conflicting views. There is another well recognized rule which we do approve as applicable and decisive of the present issue. This rule is to the effect that past illicit relations between the parties to a contract will not invalidate it, if it is otherwise supported by valuable consideration. Williston on Contracts, § 1745; Corbin on Contracts, § 1476; 17 C. J. S., Contracts, § 266b.

While none of our own cases are precisely in point on the question under consideration, a somewhat analogous situation was presented in *Mitchell* v. *Fish,* 97 Ark. 444, 134 S. W. 940, 36 L. R. A., N. S., 838. In that case plaintiff left her husband and illegally cohabited with the defendant in the state of Washington for about 10 years

during which time they accumulated certain property through their joint efforts. They sold the property under an agreement to divide the proceeds, and she signed the deed as his wife. It was also agreed that plaintiff should remain in Washington for the purpose of securing a divorce from her husband while defendant proceeded south and invested the sale proceeds for them jointly in other lands. Defendant came to Arkansas where he purchased land with a part of the proceeds arising from the sale of the land in Washington. Plaintiff secured the divorce and on her way to Arkansas met another man whom she subsequently married. In her suit to recover her share of the profits under their alleged partnership agreement the trial court held that the agreement was so tainted with immorality that the court would not enforce it. In reversing the decree, this court said: ". . . it is not necessary to decide whether the relation of concubinage between the parties to this suit was incidental, and was not the motive and cause of them living together as husband and wife and forming the partnership; for we hold that, although the partnership may have been illegally formed on account of the consideration for it being the living together of the parties illegally as husband and wife, yet when the contract has been executed without the aid of the courts by the voluntary acts of the parties and a division of the profits has been agreed upon, such division of profits forms a new contract, which is collateral to and not contaminated by the original contract, and that the partner entitled to a share of such profits may enforce his right thereto in the courts." This rule is well recognized and has been applied in other jurisdictions. See Anno.: 31 A. L. R. 2d 1281.

There is still another applicable rule which we approved in the recent case of *Bodcaw Oil Co., Inc.* v. *The Atlantic Refining Co.,* 217 Ark. 50, 66, 228 S. W. 2d 626. It is set forth in Williston on Contracts, § 137, as follows: " 'Somewhat analogous to the surrender of a supposed claim as consideration for a promise is the assignment of a supposed right of another kind. Certainly if the parties confessedly bargain for the assignment of such right

as the grantee may have, be it small or great, or none at all, the assignment in fact is sufficient consideration for a promise though it turns out that there is no right transferred. The only possible exception to such a rule is that, if no reasonable person could suppose the assigned chance was of any value, it might then be insufficient consideration. But even in such a case the execution· of a quitclaim deed or other desired paper would support a promise.' ''

Appellee relies on the case of *In re Greene,* 45 Fed. (2) 428, Dist. Ct. S. D., N. Y., where a woman filed a claim against her bankrupt paramour's estate based upon a contract similar to the one involved here. In reversing the referee's order of allowance, the court said:

''The law is that a promise to pay a woman on account of cohabitation which has ceased is void, not for illegality, but for want of consideration. The consideration in such a case is past.

''The mere fact that past cohabitation is the motive for the promise will not of itself invalidate it, but the promise in such a case, to be valid, must be supported by some consideration other than past intercourse. Williston on Contracts, §§ 148, 1745.'' The court further found that there was no consideration for the contract other than the past illicit relations which, standing alone, were held insufficient to support the contract of the parties.

In the case at bar we hold that the contract was supported by valuable consideration aside from the past illicit relations of the parties. The parties had separated and agreed to permanently sever their illicit relationship. It is undisputed that a portion of the personal property to which appellant relinquished her interest under the contract was her separate property. It is also certain that both parties confidently supposed that appellant had the right to assign an interest in the real estate, and a cloud upon the title to the property was removed by her reconveyance of such supposed interest to him. In fact appellee was so strong in his belief that the parties owned the property jointly that he paid 10

monthly payments under the contract before he decided otherwise. Appellant's relinquishment of all right and title to her separate personal property and her supposed right in the real estate constituted a valid consideration for the contract, and it is unnecessary to determine whether she was a tenant in common under the deed to them jointly.

The decree is accordingly reversed and the cause remanded with directions to enter a decree not inconsistent with this opinion.

MINOR W. MILLWEE, Justice. (Supplemental Opinion on Rehearing). Our attention is now called to the applicability of Act 470 of 1949, Ark. Stats., § 27-1729 (1953 Cumulative Supplement). After appellant rested her case in the trial court, the appellee's motion for a ''directed verdict'' was sustained and the cause dismissed. While the motion was not in writing as required by the statute, this defect was waived by appellant's failure to object on that ground. *Thompson* v. *Murdock Acceptance Corporation,* Law Reporter, April 12, 1954. Since appellee's motion challenging the sufficiency of the evidence was erroneously sustained, § 27-1729, *supra,* requires that the cause be remanded for further development of the proof in accordance with the terms of said statute. *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225. The petition for rehearing is accordingly denied but the cause will be remanded for further proceedings.