RACHEL *v.* JOHNSON.

5-1894                                        328 S. W. 2d 87

Opinion delivered October 12, 1959.

1004

*Henry S. Wilson,* for appellant.

*Frank Sloan* and *Marvin P. Watkins,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellant, Pealie Goodloe Rachel (an insane woman acting by her guardian), to quiet title to thirteen acres of land. The defendants are the plaintiff's nephew and niece. At the close of the plaintiff's proof the chancellor sustained a demurrer to the evidence and dismissed the complaint. Under the rule adopted in *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225, the question is whether the plaintiff produced sufficient evidence to have made a case for the jury if the suit had been tried at law.

The land was formerly owned by the appellant's father, Philip Goodloe, who died in 1936. He was survived by a son, Thomas, who died intestate and without descendants in 1957, by his daughter Pealie, and by two grandchildren (the appellees), the children of a deceased daughter. It will be seen that by the laws of descent and distribution Pealie now owns a half interest in the land and each of the appellees owns a fourth interest. In claiming title to the whole Pealie relies upon an alleged will by which her father left the property to her and, alternatively, upon adverse possession during the years between her father's death in 1936 and the institution of this suit in 1958.

Little need be said about the supposed will of Philip Goodloe. The document was recorded in the probate clerk's office, but there is no proof that it was ever admitted to probate. Under the statute that governed in 1936, as well as under the Probate Code, an

unprobated will is not entitled to recognition as evidence of title. Pope's Digest, § 14531; *Dodd* v. *Holden,* 205 Ark. 817, 171 S. W. 2d 948, distinguishing *Arrington* v. *McLemore,* 33 Ark. 759; Ark. Stats. 1947, § 62-2126. The appellee James E. Johnson, who, together with his sister, was called as a witness by the plaintiff, testified that the will was prepared while Philip Goodloe lay unconscious, three days before his death, and that the attesting witnesses took the testator's hand and marked an ''X'' on the document. He also quotes his Aunt Pealie as having said that the will was just a protection to keep other relatives from getting the property. This testimony establishing the invalidity of the will is undisputed.

We are also of the opinion that there is no substantial evidence to support the claim of adverse possession. Upon Philip Goodloe's death intestate in November, 1936, his two surviving children and his two grandchildren became tenants in common. At first Pealie lived on the property with her husband and her brother, but her occupancy was brief, as she was adjudged to be insane and confined to the State Hospital in August, 1937. She is said to have burned the dwelling on the land, presumably before she was confined, and after that her brother built a shack on the property and lived in it for a time before he too lost his mind and became an inmate of the State Hospital.

For Pealie to establish title by adverse possession she has the burden of proving that her hostile claim was brought home to the appellees either directly or by acts so notorious that notice must be presumed. *Smith* v. *Kappler,* 220 Ark. 10, 245 S. W. 2d 809. As in the *Kappler* case Pealie's actual possession was insufficient to supply the necessary element of hostility. Furthermore, Pealie shared the possession with her brother, another of the cotenants, and he actually became the sole possessor of the land after Pealie entered the state institution.

Apart from Pealie's brief and ineffectual possession there are only two facts even tending to sustain

the claim of adverse possession. First, it is shown that the taxes were paid in Pealie's name, but this circumstance is here even more effectively rebutted than was similar proof in the *Kappler* case. During the many years of Pealie's incompetency the land was managed by her uncle, Jim Goodloe, who collected the rents and paid the taxes. One of the appellees, Edith Johnson Nolen, testified without contradiction that she permitted the rents to be used for the purchase of clothing for Pealie; "she was incompetent and needed it — she raised us, and I felt like I owed her that much." Thus the payment of taxes cannot be regarded as an indication of a hostile claim by Pealie, if indeed it be assumed without proof that the afflicted woman had sufficient mental capacity to assert a claim of exclusive ownership.

Secondly, the appellant offered to show by one witness that "the general consensus in the community was that the property down there was owned by Pealie Goodloe . . . and the general reputation in the community was that she was claiming to be the owner of it." There is no proof that this general belief was brought home to the appellees, who were for the most part nonresidents of the state, and in any event the vague assertions of public opinion do not establish notorious *acts* of such unequivocal character that notice to the appellees must be presumed. *Smith* v. *Kappler, supra; Ball* v. *Messmore,* 226 Ark. 256, 289 S. W. 2d 183.

Affirmed.