John W. BIRD *v.* Oma L. BIRD et al

73-7                                                  497 S.W. 2d 659

Opinion delivered July 9, 1973
[Rehearing denied August 27, 1973.]

*Kenneth C. Coffelt,* for appellant.

*Joe Purcell, Ben McCray,* and *Moses, McClellan, Arnold, Owen & McDermott,* for appellees.

J. FRED JONES, Justice. This is an appeal by John W. Bird from an adverse chancery court decree on a petition he filed against Oma L. Bird and Mr. and Mrs. Voyles and counter petitions they filed against him for confirmation of title to two 40 acre tracts of land.

The two contiguous 40 acre tracts are identified by legal description in the pleadings but for convenience they were designated as tract Nos. 1 and 2 in the pleadings and will be so designated here. The appellee Oma L. Bird is the widow of Judson E. Bird who was a brother of the appellant, John W. Bird, and the appellees Mr. and Mrs. Voyles are grantees in possession of the lands here involved under a deed from Judson prior to his death in 1971. The appellant John Bird has been living in the state of Michigan for many years, while Judson continued to live on the land here involved. Judson acquired record title to tract No. 1 by corporate deed from a railroad company in 1920 and John acquired record title to tract No. 2 by warranty deed from his parents in 1929. Tract No. 1 was sold to the state for the nonpayment of the 1933 taxes while assessed in Judson's name. Tract No. 2 was sold to the state for the nonpayment of the 1934 taxes while assessed in John's name. John acquired a state deed to tract No. 1 in 1937 but held it from record until a duplicate was filed on September 15, 1971 (two days after his complaint was filed). Judson acquired a state deed to tract No. 2 in 1938 and held it from record until it was filed on March 22, 1966, approximately one month before he conveyed the property to appellee Voyles as hereafter noted.

Judson built a house on a plot of ground 208′ by 300′ in tract No. 2 and lived in the house for a number of years during which time he rented the remainder of both tracts to a Mr. Scott who pastured the land. In April, 1966,

Judson sold both tracts except the house plot to the appellees T. O. and Gertrude Voyles and retained a lien for the balance of purchase price. On the same date he also executed an option deed to Mr. and Mrs. Voyles on the house plot. Judson died testate about January, 1971, and the appellee Oma Bird claims Judson's interest in the land and proceeds from its sale as widow and as sole beneficiary under his will.

On September 13, 1971, John filed his petition herein against Oma Bird and Mr. and Mrs. Voyles alleging ownership in all the land. He alleged ownership of tract No. 1 by virtue of the state deed and ownership of tract No. 2 by virtue of his record title. He prayed that title be confirmed in him and that the deeds to Voyles be canceled. Mrs. Oma Bird and Mr. and Mrs. Voyles answered by general denial and plea of statute of limitations. By counterclaim they alleged title to tract No. 1 by deed record title, and alleged title to tract No. 2 by color of title under the state deed and adverse possession. John answered the counterclaim by alleged payment of taxes and permissive use of the land by Judson.

At the trial of the case, after preliminary motions, including one for summary judgment were disposed of, John Bird deraigned his title as above set out and testified in substance that he had claimed title to the property from the dates of his deeds, and that everyone knew he was claiming title to the property. He said he had permitted Judson to live on the property and had no knowledge that Judson was claiming the land, or had attempted to sell it, until he received a quitclaim deed with request that he execute it, from Oma's attorney in February, 1971, after Judson's death. He said he had authorized Judson to build and occupy the house on tract No. 2; that he had authorized and permitted Judson to rent the property to Scott through the years and had paid the taxes on the property by authorizing and directing Judson to pay the taxes out of the rent money paid by Scott. He said he had no knowledge that Judson was assessing the property in his own name.

Mr. Milton Scott and Mr. Lilburn Kirkpatrick had made affidavits pertaining to possession of the land in

connection with the motion for summary judgment filed on behalf of Mr. and Mrs. Voyles and they were called as witnesses on cross-examination by the appellant's attorney at the trial. Mr. Scott testified that he had rented the property involved from Judson for approximately 20 years and that Judson was in exclusive possession of the property during that time. He said he had no knowledge of who actually owned the property, but that Judson had the reputation in the community of being the sole owner of the property. He said he never did know of anyone claiming any ownership in the property other than Judson. Mr. Kirkpatrick testified that he built a pond on his own land adjacent to the property here involved and obtained a written release from Judson for any damages that might be sustained to the land here involved by reason of overflow from the pond. He testified that all the neighbors said that the property belonged to Judson; that Judson had always been in exclusive possession of the properties and he knew of no one else claiming title to it.

When Mr. Kirkpatrick finished testifying, appellee Voyles moved for a directed verdict because the appellant had not met his burden of proof of ownership by preponderance of the evidence. The motion was vigorously resisted by the appellant and it was pointed out that as the record then stood, the appellant had proved record title; that the affidavits of Scott and Kirkpatrick stated in effect that they did not know who owned the property and that the evidence as it then stood, was to the effect that the appellant had paid the taxes through the years through an arrangement with Judson Bird. The chancellor granted the motion on findings as follows:

> "The court is going to direct a verdict. The testimony here this morning is—giving it its greatest weight— is still—the testimony is that they sent money, or that the income from the property should have paid the taxes but there is no receipts, no—nothing other than his word that they sent money in the record. The man's been in possession out there for better than thirty (30) years and has sold property and operated it like it was his own. The court will direct a verdict in favor of the defendant."

The appellant contends that the trial court erred in abruptly concluding the case before the appellant had rested, but we cannot say from the record before us, that the chancellor erred in this regard. After the appellant had presented his primary evidence, he called the two affiants whose affidavits were submitted in support of the appellees' motion for summary judgment and proceeded to cross-examine them. Mr. Kirkpatrick was examined last. He was questioned first by the appellant on cross-examination and then by the appellees, and at the close of his testimony the attorney for the appellees inquired if the witness might be excused and the attorney for the appellant stated: "That's all . . . he can as far as we're concerned." The chancellor then excused the witness and the record simply recites: "No further testimony was offered." We agree that the record would be clearer had the chancellor inquired as to whether the appellant had other evidence he wished to offer, but if the appellant did have additional evidence he desired to offer, it would have been a small matter for him to so advise the chancellor.

The appellant's remaining points relied on as set out in his brief are to the effect that the chancellor's decree was contrary to the weight of evidence; that the only competent evidence was that offered by the appellant and his supporting witnesses; that the court erred in refusing to permit a witness to testify as to the date of death of the grantor of one of the parties and that this court should enter judgment here in favor of the appellant, particularly as to tract No. 2 on the basis of the appellant's warranty deed from his parents.

We do not discuss these points specifically for we find that we must reverse the decree in this case for another reason. We find no error in the chancellor's decree as to tract No. 1 because there is substantial evidence that Judson Bird owned record title to this tract from the time he purchased it from the railroad in 1920 until he sold it to Voyles. He apparently retained uninterrupted possession of it at all times and his sister who testified for the appellant said it belonged to him and there is no substantial evidence to the contrary. Furthermore, it is apparent from the appellant's brief that he abandoned any claim to tract No. 1 under the deed he obtained from the

state and filed for record after he filed his petition in this case. He does not contend that he ever had actual possession of any of the land.

As to tract No. 2, we are of the opinion that this case is controlled by our decision in *Werbe* v. *Holt*, 217 Ark. 198, 229 S.W. 2d 225. The appellees' motion was obviously granted under Ark. Stat. Ann. § 27-1729 (Repl. 1962) which provides as follows:

"Upon the closing of plaintiff's or moving party's proof and an announcement by plaintiff or moving party to that effect, in any cause now pending or hereafter filed in any court of chancery in this state, the defendant, or defendants, may file a written motion challenging the sufficiency of the evidence to warrant the Court to grant the relief prayed for on the record existing. Thereupon, the chancellor shall consider and determine such motion; and if such motion be sustained, he shall thereupon dismiss the cause of action.

If the motion be sustained by the chancery court, and appeal is taken that the Supreme Court reverses the Lower Court, then the cause shall be remanded to the Lower Court for proof and development of the case by the party making the motion.

If the motion be overruled, then the party filing the motion may save exceptions and proceed to take proof or elect to stand on his motion, and appeal to the Supreme Court. In the event the motion is overruled and the party making it elects to stand on the motion and appeal to the Supreme Court and the Lower Court's action in overruling the motion be affirmed, it shall constitute a final judgment in the case."

In *Werbe* v. *Holt, supra,* this court said:

"When the defendant in an equity or probate case asks for judgment at the close of the plaintiff's testimony, should the trial judge view the evidence in the light most favorable to the plaintiff to determine whether a *prima facie* case has been made, or should

he weigh the testimony to decide whether the plaintiff has proved his case by a preponderance of the evidence? In short, does a motion filed under Act 470 present an issue of law or of fact? In the case at bar this question is of primary importance, for the appellants' proof was undoubtedly sufficient to raise a jury question had the suit been tried in a circuit court. But if the problem is where the preponderance lay, a much closer question is presented.

Forceful arguments are advanced to support each suggested construction of Act 470. For the appellee it is said that the trial judge must eventually weigh the evidence in any event; why should he not do so at the first opportunity? The appellants answer that reason and authority back their contention that the motion raises only an issue of law regarding the sufficiency of the plaintiff's case.

After a painstaking study of this matter we are unanimously of the opinion that the motion presents a question of law and not of fact. The General Assembly evidently chose its language with care, and what the motion challenges is 'the sufficiency of the evidence' to warrant the relief prayed. The quoted phrase has a familiar legal meaning—a meaning that does not involve the weighing of evidence. For instance, it is often said that the defendant's motion for a directed verdict in suits at law challenges 'the sufficiency of the evidence' to take the case to the jury. Here the legislature has used a phrase of well known legal signification, and it is presumed to have used the language in that sense. *Fernwood Mining Co.* v. *Pluna,* 138 Ark. 459, 213 S.W. 397.

\* \* \*

What, then, is the effect of a demurrer to the evidence or a similar pleading in jurisdictions recognizing that practice? The question may arise either in equity cases, where the chancellor is the arbiter of the facts, or in cases tried at law without a jury where also the trial judge decides all issues of fact. By the overwhelming weight of authority it is the trial

court's duty, in passing upon either a demurrer to the evidence or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence when so considered fails to make a *prima facie* case."

In *Cunningham* v. *Chamblin,* 227 Ark. 389, 299 S.W. 2d 89, we also said:

"We have held that a motion by the defendant for a 'directed verdict' at the close of plaintiff's proof in a chancery case may be treated as one challenging the sufficiency of the evidence under Ark. Stat. Ann. § 27-1729; and that the requirement that such motion be in writing may be waived by plaintiff's failure to object on that ground. *Thompson* v. *Murdock Acceptance Corp.,* 223 Ark. 483, 267 S.W. 2d 11; *Karoley* v. *Reid,* 223 Ark. 737, 269 S.W. 2d 322. It is also settled that, in passing on a demurrer to the evidence filed by a defendant under the statute, the chancellor must view the testimony in the light most favorable to the plaintiff, and if so viewed a *prima facie* case has been made then the demurrer should be overruled. *Werbe* v. *Holt,* 217 Ark. 198, 229 S.W. 2d 225."

Then in *Rachel* v. *Johnson,* 230 Ark. 1003, 328 S.W. 2d 87, we said:

"At the close of the plaintiff's proof the chancellor sustained a demurrer to the evidence and dismissed the complaint. Under the rule adopted in *Werbe* v. *Holt,* 217 Ark. 198, 229 S.W. 2d 225, the question is whether the plaintiff produced sufficient evidence to have made a case for the jury if the suit had been tried at law."

It may be that the chancellor would have reached the same conclusion he did reach in this case had he overruled the appellees' motion for a "directed verdict" at the close of the appellant's case, and the appellees had offered only the testimony of Messrs. Scott and Kirkpatrick as affirmative evidence supporting their claim of adverse possession; but, in that event, we could have reviewed the chancellor's

decree along with the entire record de novo on appeal for a determination of whether the chancellor's decree was against the preponderance of the evidence.

The decree is affirmed as to tract No. 1 but reversed as to tract No. 2 and remanded for further proceedings not inconsistent with this opinion as to tract No. 2.

Affirmed in part, reversed in part and remanded.

BYRD, J., not participating.