The Honorable Gilbert Baker State Senator # 17 Cooper Lane Conway, Arkansas 72034-7935
Dear Senator Baker:
I am writing in response to your request, on behalf of the President of a public facilities board know as "the Vilonia Waterworks Association" ("VWA"), for an opinion on several questions relating to the possible expansion of the board of that entity. Specifically, correspondence attached to your request indicates the following facts:
 The Vilonia Waterworks Association is organized as a public facilities board pursuant to Arkansas Code Annotated § 14-137-101 et seq.[1] It was created by the adoption of an ordinance passed by the City of Vilonia in September of 1991. Prior to that time it had operated as a non-profit corporation chartered by the State of Arkansas in the early 1970s.
 Currently the Association has roughly 7,000 members for whom it provides water service. Approximately 1,000 of those are located within the municipal boundaries of the City of Vilonia, with the balance located outside the city, mostly in eastern Faulkner County, with a relatively small number in western White County. The board of directors consists of five (5) members, each chosen from a geographical area [set out in Article VII of the Association's by-laws].
 In 2005, VWA acquired the assets and assumed the liabilities of the Enola-Mt. Vernon Public Water Authority (E-MV), which, as the name suggests, had served the areas in and around the towns of Enola and Mt. Vernon, and points in between, although formally associated with neither town, and had approximately 600 customers at the time. Enclosed is a copy of the "Water System Acquisition Agreement" entered into by the parties. Since that time VWA has operated and enhanced that system, and earlier this year it refinanced all its outstanding loans. As the board membership boundaries are currently drawn, they include all of the area served formerly by Enola-Mt. Vernon and now by VWA to allow the potential for election of up to three (3) directors to the VWA board, since they are described as "extending north to the boundary line of the service area."[2]
You reference A.C.A. § 14-137-108, subsection (a)(8)(A), which states with regard to public facilities boards that: "If the jurisdiction of the board, pursuant to interlocal agreements, expands to provide services outside the boundaries of the governmental unit from which it obtains power, then not more than two (2) additional members per governmental unit may be added pursuant to the terms of any relevant interlocal agreement."
You pose the following five questions with regard to these facts and the referenced subsection:
 1. Is the purchase of assets and assumption of liabilities by VWA of the Enola-Mt. Vernon System a [sic] "interlocal agreement" as described in the section quoted above?
 2. Can the VWA expand its board pursuant to that section?
 3. If so, who makes the appointments given the language in paragraph (8)(A)(ii)(a) above, and the fact that the vast majority of the association membership resides outside the municipal boundaries of Vilonia, Enola, or Mt. Vernon, and neither of the latter two towns had any association with E-MV?
 4. Can VWA by its by-laws establish geographical districts from which the board members must be selected? This districting scheme was first adopted by VWA while it was a nonprofit corporation, and continued once it became a public facilities board. Arkansas Code Annotated § 14-137-101 et seq. is silent on that point.
 5. If so, can it re-draw those boundaries given the expansion of its service area, or is that power vested solely with the municipality establishing board?
RESPONSE
It is my opinion that the answer to your first and second questions is "no." It is unnecessary to answer your third question in light of the answers to your first two questions. The answer to your fourth question is in my opinion "no," the establishment of such geographical districts may not, under current law, be accomplished through the Board's by-laws. Although it may be technically unnecessary to answer your fifth question in light of my response to your fourth question, in my opinion the city council in all likelihood has the authority under A.C.A. §14-137-108(a)(3)(B)(i) to adopt an ordinance drawing geographic districts for the selection of board members. In my opinion, however, the membership of the board (the number of board members), may not be expanded absent the existence of a proper interlocal agreement as contemplated by A.C.A. § 14-137-108.
Question 1 — Is the purchase of assets and assumption of liabilities byVWA of the Enola-Mt. Vernon System a [sic] "interlocal agreement" asdescribed in the section quoted above?
In my opinion the answer to this question is "no." The "Water Systems Acquisition Agreement" ("Agreement") enclosed with your request in not styled as an "interlocal agreement" and makes no reference to the "Interlocal Cooperation Act," codified at A.C.A. §§ 25-20-101 to — 108 (Repl. 2002 and Supp. 2005). Although § 14-137-108(a)(8)(A)(i) refers only to "interlocal agreements," and not specifically to the "Interlocal Cooperation Act" found at A.C.A. §§ 25-20-101 to -108 (or to A.C.A. § 14-14-910 regarding county interlocal agreements), in my opinion the use of the term "interlocal agreements" in A.C.A. §14-137-108 was intended to describe a formal agreement entered into in accordance with the specific statutory procedures governing interlocal cooperation agreements. It is a rule of statutory construction that where the legislature has used a phrase of well-known legal signification, it is presumed to have used the language in that sense.Henderson v. Russell, 267 Ark. 140, 589 S.W.2d 565 (1979); Bird v.Bird, 254 Ark. 858, 497 S.W.2d 659 (1973); Maddox Coffman v.State, 220 Ark. 762, 249 S.W.2d 972 (1952); Werke v. Holt, 217 Ark. 198,229 S.W.2d 225 (1950); and Fernwood Mining Company v. Pluna,138 Ark. 459, 213 S.W. 397 (1919). The term "interlocal agreement" is used numerous times throughout the Arkansas Code, in each instance appearing to refer to the type of agreement authorized at A.C.A. §§ 25-20-101
to -108 or § 14-14-910. See, e.g., A.C.A. §§ 13-2-407; 13-2-408;14-14-613 and 14-14-910. In my opinion, therefore, the reference in A.C.A. § 14-137-108 to an "interlocal agreement" refers only to agreements executed in compliance with the provisions of the Interlocal Cooperation Act or to the similar provisions for interlocal agreements found in the County Government Code (A.C.A. § 14-14-910). The provisions of the Interlocal Cooperation Act (and A.C.A. § 14-14-910 as to counties), contemplate joint or cooperative action between "public agencies" and contain a number of statutorily required elements before such agreements may be finalized. In my opinion, the Water Systems Acquisition Agreement at issue herein is not, and does not purport to be, an interlocal cooperation agreement. It does not contemplate joint or cooperative action for purposes of these provisions, but is rather a "transfer" and "conveyance" of all assets of the former Enola Mt. Vernon Public Water Authority to the Vilonia Waterworks Association.See Agreement, § 1 (". . . VWA hereby acquires from EMV, and EMV hereby conveys, transfers, assigns and delivers to VWA, contemporaneously with closing (as defined herein), all of the right, title and interest of EMV in and to the water system and transferred assets"). In addition, it is not clear that the parties would be "public agenc[ies]" for purposes of the Interlocal Cooperation Act. See A.C.A. § 25-20-103(1) (Supp. 2005). In my opinion, therefore, the answer to your first question is "no," the Water System Acquisition Agreement is not an "interlocal agreement." This fact does not mean the Agreement is in any way unauthorized, it is simply not an "interlocal agreement" for purposes of A.C.A. §14-137-108.
Question 2 — Can the VWA expand its board pursuant to thatsection?
In my opinion the answer to this question is also "no." The subsection referenced, A.C.A. § 14-137-108(a)(8)(A)(i) and (ii)(a), provides as follows:
 (a)(1) Each public facilities board shall consist of five (5) members unless there is an expansion of the board to provide services outside the boundaries of the governmental unit from which it obtains power.
 * * * (8)(A)(i) If the jurisdiction of a board, pursuant to interlocal agreements, expands to provide services outside the boundaries of the governmental unit from which it obtains power, then not more than two (2) additional members per governmental unit may be added pursuant to the terms of any relevant interlocal agreement.
 (ii)(a) Each member shall be appointed by the mayor of the newly participating municipality or the county judge of the newly participating county and shall serve for a term agreed upon in the interlocal agreement.
(Emphasis added).
Presumably the introductory language of (a)(1) above, regarding a possible expansion of the board, refers to the expansion authorized by interlocal agreements referenced in subsection (a)(8)(A). This latter language clearly refers to an expansion of the service area of a public facilities board through an "interlocal agreement." (See
Acts 1987, No. 407, adding the language in (a)(1) and (a)(8)(A) with regard to expansion of the membership.) As noted above, the Agreement at issue does not mention the Interlocal Cooperation Act; does not contemplate joint or cooperative action; and is not the sort of agreement falling within the provisions of the Interlocal Cooperation Act. In my opinion the answer to your second question is therefore also "no."
Question 3 — If so, who makes the appointments given the language inparagraph (8)(A)(ii)(a) above, and the fact that the vast majority ofthe association membership resides outside the municipal boundaries ofVilonia, Enola, or Mt. Vernon, and neither of the latter two towns hadany association with E-MV?
It is unnecessary to answer this question in light of the responses to Questions 1 and 2 above. I will note however, in response to your comment about the "vast majority of the association membership" residing outside the municipal boundaries, that the statutes governing public facilities boards authorize the provision of services outside the boundaries of the authorizing municipality. See A.C.A. § 14-137-107(b) (Repl. 1998) ("[u]nless limited by the creating ordinance, each board created by a municipality shall be authorized to accomplish public facilities projects within or near or partly within and partly near the municipality." The Vilonia ordinance creating the VWA does not restrict the provision of services. It authorizes the provision of services "within and near the City" and acknowledges that the former nonprofit corporation "serves citizens and residents of the City and the areas surrounding the City in Faulkner, White and Pulaski Counties. . . ." Vilonia Ordinance 91-6 (Introductory section).
Question 4 — Can VWA by its by-laws establish geographical districtsfrom which the board members must be selected? This districting schemewas first adopted by VWA while it was a nonprofit corporation, andcontinued once it became a public facilities board. Arkansas CodeAnnotated § 14-137-101 et seq. is silent on that point.
In my opinion the answer to this question is "no," the Vilonia Water Association may not, on the sole authority of its own by-laws, establish geographic districts from which board members may be selected. Some explanation is necessary.
It will be helpful, as an initial matter, before addressing the statutes applicable to membership of public facilities boards, to detail the history of this particular public facilities board with regard to selection of board members, including the ordinance creating the Board, and the Board's by-laws.
As you note, the "Vilonia Waterworks Association" was formerly organized as a private nonprofit corporation beginning sometime in the 1970s, transforming into a "public facilities board" in 1991. As with any nonprofit corporation established and operated in the 1970s, it presumably at that time: 1) operated under articles of incorporation and by-laws; 2) had one or more classes of "members" who may have paid a membership fee; and 3) was governed by a board of directors elected by the membership. See A.C.A. §§ 4-28-206, and 209-213 (Repl. 2001) (provisions of the "Arkansas Nonprofit Corporation Act"). Your fourth question indicates that a geographic districting scheme for the selection of board members "was first adopted by VWA while it was a nonprofit corporation." This is apparently true despite a provision of the Arkansas Nonprofit Corporation Act to the effect that: "the board of directors shall be elected by vote of the entire membership of the corporation." A.C.A. § 4-28-211(a) (Repl. 2001).
At the time the nonprofit corporation became a public facilities board in 1991, the City of Vilonia passed an ordinance creating the public facilities board, describing the conversion of the nonprofit corporation as follows:
 . . . the board of directors of the nonprofit corporation and members of the Association approved the transfer of the assets and operations of the Association to the Vilonia Waterworks Association, a public facilities board established by this Ordinance, in order to permit the exercise of eminent domain and the borrowing of funds for operations, expansion, capital improvements and refunding of debt at tax-exempt rates. . . .
City of Vilonia Ordinance 91-6 (Introductory section).
The Ordinance named the initial five members of the public facilities board in the ordinance and set their staggered terms. Id. at Section 2. The Ordinance provides that "[s]uccessor members shall be elected by amajority of the Board for terms of five years each." (Emphasis added).
Despite these provisions of the Ordinance, the "by-laws" of the new public facilities board establish a slightly different procedure for the selection of board members, both initial members and successor members.[3] The by-laws of the public facilities board provide, with regard to the selection of directors, that:
 Section 1. The Board of Directors of VWA shall consist of five (5) members unless there is an expansion of the Board pursuant to Section 7(a) below.[4]
 Section 2. (a) The initial members shall be appointed by the Mayor of the City of Vilonia, Arkansas, for terms of one (1) , two (2), three (3), four (4), and five (5) years, respectively, with one member to come from each of five (5) defined districts, the inclusive area of each district to be defined as follows:
 District 1: All lands included within the city limits of Vilonia, Arkansas including any future areas annexed thereto, and including all other lands located north of Highway 64 which lie east of a line beginning at the intersection of Beryl Road and Highway 64, and extending north to the boundary line of the service area, and west of a line beginning at the intersection of Highway 107 and Highway 64, and extending north to the bound line of the service area.
 District 2: All lands south of Highway 64 and east of Highway 107, and north of Highway 64 and east of a line beginning at the intersection of Highway 107 and Highway 64, and extending north to the boundary line of the service area, excluding any portion thereof located in the city limits of Vilonia, Arkansas.
 District 3: All lands west of Highway 107, south of Highway 64, and east of Saltillo Road, excluding any portion thereof located in the city limits of Vilonia, Arkansas.
 District 4: All lands north of Highway 64 and west of a line beginning at the intersection of Beryl Road and Highway 64, and extending north to the boundary of the service area.
 District 5: All lands west of Saltillo Road and south of Highway 64.
 The Mayor of Vilonia, Arkansas shall only appoint those persons nominated and elected as Board members at the annual membership meeting of VWA by a majority of those members present.
 (b) Successor members shall be appointed by a majority of the Board for terms of five (5) years each following their election by a majority of the membership present at the annual membership meeting.
The by-laws thus differ from the ordinance by: 1) requiring the appointments to be made only after the election of such persons by the "membership present at the annual membership meeting" and 2) adding a geographic component to their election. Your fourth question focuses on this geographic component, and inquires as to whether it may legally be established through the VWA's bylaws.
As an initial matter, it is unclear, in my opinion, whether the reference to geographic districts refers only to the initial members appointed under subsection (a), or also to the successor members appointed under subsection (b). Subsection (a), including the five different geographic districts described, appears to be addressed only to the appointment of initial board members — that is the very first members appointed when the public facilities board was created. It requires their appointment by the mayor from the geographic districts mentioned, and only after those persons have been elected by the majority of the members present at the annual membership meeting of the VWA.[5] Subsection (b) addresses "successor members," meaning members selected to fill the terms arising after expiration of the initial staggered terms. Subsection (b), addressing successor members, does not appear to impose any geographic districts from which board members must be selected, but, as with initial members, also requires that the board appoint them "following their election by a majority of the membership present at the annual membership meeting."[6] I am not in a position to definitively interpret the provisions of local ordinances or by-laws of public entities. Such interpretation in some cases may be dependent upon the intent of local officials. In any event, your question is whether this geographic district requirement is consistent with the applicable state law. I assume, therefore, that current board members, that is, "successor members" are selected by geographic district.
With the history of this particular public facilities board and the local provisions in mind, the applicable statutes governing public facilities boards may now be discussed. Section 14-137-108 (Supp. 2005) governs the appointment of board members. It contains different provisions according to the population of the county or city creating the public facilities board, but it appears that with regard to the board you describe, the following provisions are pertinent to your question:
 (a)(1) Each public facilities board shall consist of five (5) members unless there is an expansion of the board to provide services outside the boundaries of the governmental unit from which it obtains power.
 * * * (3)(A)(i) The initial members shall be appointed by the mayor of the creating municipality or the county judge of the creating county for terms, respectively, of:
 (a) One (1) year;
 (b) Two (2) years;
 (c) Three (3) years;
 (d) Four (4) years; and
 (e) Five (5) years.
 * * * (B)(i) Successor members shall be nominated by a majority of the board and appointed by the mayor or the county judge, subject to confirmation by the governing body of the municipality or county for staggered terms of five (5) years each, unless the ordinance pursuant to which the public facilities board was formed provides for electing successor members by the membership of the board's service area.
 * * * (8)(A)(i) If the jurisdiction of a board, pursuant to interlocal agreements, expands to provide services outside the boundaries of the governmental unit from which it obtains power, then not more than two (2) additional members per governmental unit may be added pursuant to the terms of any relevant interlocal agreement.
 (ii)(a) Each member shall be appointed by the mayor of the newly participating municipality or the county judge of the newly participating county and shall serve for a term agreed upon in the interlocal agreement.
Id. (Emphasis added).
The applicable statute thus provides that successor board members are to be: 1) "nominated" by the board itself, 2) appointed by the mayor, and 3) confirmed by the governing body of the city — unless theordinance creating the public facilities board "provides for electing successor members by the membership of the board's service area."[7]
(Emphasis added). The statute does not mention any geographic districts from which board members may be selected. Your question is whether such a requirement may be imposed by the by-laws of the public facilities board. In my opinion the answer to this question is "no." The statute above authorizes an ordinance to allow the election of board members from the membership of the service area. It does not currently authorize the by-laws of a public facilities board to adopt any alternate methods of selection, or with any power to vary or restrict the discretion of the appointing authorities under A.C.A. § 14-137-108(a). This is in contrast to previous law (now repealed), which authorized "theby-laws of the public facilities board or ordinance pursuant to which the public facilities board was formed [to] provide for an alternative means of electing successor members." See Acts 1999, No. 782, now amended by Acts 2003, No. 544. (Emphasis added). Current law provides that only an ordinance of the governing body may provide for "electing successor members by the membership of the board's service area." It is somewhat unclear whether this authorization includes the power to provide for such election by geographic district, but for purposes of answering your fourth question, if this authority exists, it must be adopted by ordinance, rather than pursuant to the by-laws of the board. The current Vilonia ordinance does not authorize the election of board members by the membership of the service area, or provide any geographic districts toward that end.
Question 5 — If so, can it re-draw those boundaries given the expansionof its service area, or is that power vested solely with themunicipality establishing board?
Again, in my opinion, if the power to provide for geographic districts from which to elect board members exists, it must be adopted by the city council through an ordinance as discussed above in response to Question 4. It may not be done under current law through the by-laws of the board. It is clear, in my opinion, that A.C.A. § 14-137-108(a)(3)(B) allows the city council, through ordinance, to provide for the election of successor board members by the "membership" of the service area of the public facilities board. But see n 5, supra. What is not clear is whether the ordinance may do so through the establishment of geographic districts. The statute is silent on this point. In my opinion, however, this power may be fairly implied from the grant of authority to the city council to provide for such an election.
I will note, however, to the extent that your fifth question inquires about the re-drawing of districts in conjunction with anexpansion of the board's membership, that in my opinion such expansion may only occur pursuant to a proper interlocal agreement mentioned in A.C.A. § 14-137-108(a)(8)(A). Subsection (a)(3)(B)(i), providing for the appointment of successor members to the board and authorizing an ordinance to provide for the election of board members by the "membership" of the board's service area, in my opinion has reference to the five-member board dictated by subsection (a)(1). The only provision of the statute authorizing an expansion of the board's membership (for a city of the size of Vilonia), is subsection (a)(8)(A), which again, is inapplicable to the facts at hand because the Agreement in question is not an "interlocal agreement." Thus while the Vilonia City Council may have the authority adopt an ordinance to establish geographic districts for the election of board members, it may not, under the facts you describe, expand the membership of the board in this regard.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:ECW/cyh
[1] I assume that the Vilonia Waterworks Association was not formed pursuant to A.C.A. §§ 14-238-101 to -124 (Repl. 1998 and Supp. 2005), the "Rural Waterworks Facilities Boards Act." That Act was not adopted until 1995 (see Acts 1995, No. 617). The Act authorizes a public facilities board in existence on July 28, 1995 to petition the quorum court that created it to grant the board all powers conveyed by the Rural Waterworks Facilities Board Act. A.C.A. § 14-238-106(c). I assume, however, that this subchapter is not relevant to your request.
[2] I am somewhat uncertain as to the meaning of this sentence. I assume that because the current geographic districts are drawn with reference to the "service area," that the districts for the election of board members automatically expand with the expansion of the service area. I assume further that your reference to "the potential for election of up to three (3) directors to the VWA board . . ." implies that those residents served by the former Enola-Mt. Vernon System have the ability to elect three of the existing five members of the public facilities board.
[3] Like nonprofit corporations, public facilities boards are authorized to adopt by-laws. See A.C.A. § 14-137-111 (a)(1).
[4] According to my review of the by-laws, there is no "Section 7(a) below" addressing any possible expansion of the Board.
[5] Presumably, those persons named in the relevant ordinance were the persons selected by the mayor to serve as the initial members. I am uncertain whether these persons were also chosen by the "members" of the VWA at the annual meeting.
[6] The reference to the annual membership meeting in both subsections (a) and (b) is unclear, given that public facilities boards, unlike nonprofit corporations, do not have a "membership" or to my knowledge an "annual membership meeting." Public facilities boards are governed only by members of the board of directors. Confusion on this issue is compounded by A.C.A. § 14-137-108(a)(3)(B), referenced infra, which authorizes a city ordinance providing for electing board members "by the membership of the board's service area." Such references may reflect a confusing retention of some elements of the former nonprofit corporation structure.
[7] Again, the reference to the "membership of the board's service area" is unclear. See footnote 2, supra. Unlike nonprofit corporations, public facilities boards do not have "memberships."